STATE EX REL. McCLURE, Appellant, vs. MALLEABLE IRON RANGE COMPANY and another, Respondents.

*March 15—July 8, 1922.*

*Corporations: Right of stockholder to inspect accountant's report.*

1. A schedule sequestrating the values of real property and improvements of a corporation, prepared by an expert accountant employed by the corporation, and delivered to the president but never entered on its books, is a document which a stockholder of the corporation has a right to inspect.
2. Sec. 1757, Stats., making the books of every corporation open at all reasonable times to inspection by its stockholders, did not abridge such right as it existed at common law, but rather enlarged and extended it by removing some of the common-law limitations, and is an affirmance of the common law.
3. The fact that a corporation might become involved in complications with the United States officials charged with the enforcement of the income tax law if it exhibited the schedule to a stockholder can have no bearing upon the right of the stockholder to an inspection.

APPEAL from a judgment of the circuit court for Dodge county: CHESTER A. FOWLER, Judge. *Reversed.*

The appeal is from a judgment quashing an alternative writ of *mandamus* and dismissing the proceedings on the merits.

The petitioner is the owner of 207 out of the 1,000 shares of the capital stock of the defendant company, a Wisconsin corporation, each share being of the par value of $1,000, and the defendant *A. S. Bowron* is its secretary.

The petitioner sets forth that he desires to examine the books, records, files, accounts, etc., of said company, and particularly the schedule and work sheets showing the segregated cost of its real estate up to and including April 11, 1911. While the defendants submitted to an examination of everything prayed for by the petitioner excepting the schedule and the work sheets connected therewith, they refused expressly to produce for inspection such schedule and

work sheets. It also appears that the defendant company's real estate and improvements had been carried upon the books of the company as one item, and that during each year, in preparing its federal income-tax return, the company made its deductions for depreciation not only on the improvements but also upon the real estate. This discrepancy and impropriety had come up before the board of directors on numerous occasions subsequent to 1911 and was discussed, but no change was made in the policy of the corporation in that respect. The matter was being investigated by the officers of the federal income-tax department at or about the time of the commencement of these proceedings.

About the year 1911 the company was involved in patent infringement litigation, and, in order to prepare a proper statement of its earnings, engaged the defendant *Bowron,* an expert accountant, to examine the books of the corporation in order that the true value of the company's assets and its earnings might be ascertained. It was while engaged as such an accountant that *Bowron* prepared this so-called schedule, which was based upon certain work sheets prepared and used by him, which schedule consisted of a segregation of the values of both real estate and improvements, and which schedule and sheets were turned over to one Hill, the then president of the company.

The court found that the relator had

"made frequent requests and demands upon the defendant for inspection of its books, files and records, all of which had been acceded to by the defendant except a demand of the relator for inspection of a certain paper called in the complaint a statement of the segregated cost of the defendant's real estate. . . . That said paper was prepared by the defendant *Bowron* . . . in the year 1911 and showed the value of the land and buildings of the defendant separately at January 1st of said year [meaning 1911]. The figures thereon were compiled . . . from the company's books and records and information furnished him by the then officers of the defendant, one of whom was the relator.

The said paper was prepared incident to a statement then being prepared by *Bowron* as an accountant for use in an accounting required of the company in litigation involving patent infringements. It was not incorporated in said statement or actually used in said litigation. It was the property of the defendant. It was handed over by the said *Bowron* to the then president of the company. The values thereon set forth were never adopted by the company as the value or cost of its land and buildings, and the separate values thereof therein stated were never placed or carried on the company's books. . . . The present whereabouts of said statement or whether it now is in existence is not known by any of the principal officers of the company, and no search therefor was made prior to institution of this suit and none has been made since. Said statement was desired by relator to aid him in determining the value of his stock in contemplation of efforts to sell the same and to aid him in making a proper federal income-tax statement in case of sale. If the said sheet were made the basis of relator's statement of profits in an income-tax statement by relator in case of sale of his stock, it might cause inconvenience to defendant through revealing discrepancies between the real-estate valuations of the corporation in the company's statements and that of relator. But it is not apparent that any considerable injury could result to defendant therefrom. . . ."

As conclusions of law the court found that the particular statement referred to in the petition as a statement of segregated value of real estate was not a record, account, or book of the defendant corporation within the meaning of sec. 1757, Stats. Judgment was thereupon entered quashing the alternative writ and dismissing the proceedings on the merits.

For the appellant there was a brief by *James F. Malone* of Beaver Dam, attorney, and *Bottum, Hudnall, Lecher & McNamara* of Milwaukee, of counsel, and oral argument by *Mr. Geo. B. Hudnall* and *Mr. Malone.*

For the respondents there was a brief by *Royal F. Clark* and *A. W. Lueck,* both of Beaver Dam, and oral argument by *Mr. Lueck.*

The following opinion was filed April 11, 1922:

DOERFLER, J.    The only question involved is whether the defendants were legally bound to produce, as required by the alternative writ, the schedule and sheets showing the segregated cost of the real estate up to and including January 1, 1911.

Sec. 1757, Stats., among other things, provides that the "books of every corporation containing the stock subscriptions and accounts shall at all reasonable times be open to inspection," etc.

In *State ex rel. Bergenthal v. Bergenthal,* 72 Wis. 314, 39 N. W. 566, it is held that under said section the accounts, liabilities, and assets of the corporation are subject to inspection; and in *In re Citizens S. & T. Co.* 156 Wis. 277, 145 N. W. 646, it is held that a stockholder is entitled to examine the books, business documents, accounts, and securities of the corporation.

. In *State ex rel. Dempsey v. Werra A. F. Co.* 173 Wis. 651, 182 N. W. 354, it is held that under sec. 1757, Stats., a stockholder has an absolute and unconditional right of inspection, regardless of the motive inducing him to desire it.

The books and the property of the corporation belong to the shareholders, and those in charge of the company are merely agents and trustees for the stockholders; and, in fact, with reference to his right of inspection, the relation of the stockholder to the corporation has been likened to that of a partner to the firm.    Such right of inspection at common law cannot be denied to a stockholder who makes a demand or request in good faith, with the view of protecting his interests in the corporation and of ascertaining not only the condition of the corporation but to do such things as may be necessary for the protection of his corporate interests (7 Ruling Case Law, p. 323, § 299); although it has been held that the right will not be enforced

by courts for speculative purposes or to gratify idle curiosity when the interests of the stockholder and his protection are not involved. 7 Ruling Case Law, p. 326, § 303; *Venner v. Chicago City R. Co.* 246 Ill. 170, 92 N. E. 643.

It has also been held that the holder of corporate stock which has no market value, which he has been forced to acquire for self-protection, and which he desires to sell, is entitled to inspect the books of the corporation for the purpose of ascertaining its value. 7 Ruling Case Law, p. 327, § 303; *State ex rel. Brumley v. Jessup & Moore P. Co.* 1 Boyce (Del.) 379, 77 Atl. 16, 30 L. R. A. N. s. 290. See, also, *Stone v. Kellogg,* 165 Ill. 192, 46 N. E. 222; *Bruning v. Hoboken P. & P. Co.* 67 N. J. Law, 119, 50 Atl. 906; *State ex rel. O'Hara v. Nat. B. Co.* 69 N. J. Law, 198, 54 Atl. 241; *In re Steinway,* 159 N. Y. 250, 53 N. E. 1103.

Statutes giving the right of inspection do not abridge that right as it existed at the common law, but rather enlarge and extend it by removing some of the common-law limitations, and these statutes, it has quite generally been held, are merely an affirmance of the common law. *In re Steinway,* 159 N. Y. 250, 53 N. E. 1103; *Guthrie v. Harkness,* 199 U. S. 148, 26 Sup. Ct. 4; 14 Corp. Jur. 854; *Cobb v. Lagarde & Sons,* 129 Ala. 488, 30 South. 326.

The right of a stockholder to examine the records and books of account of a corporation extends to all papers, contracts, minute books, or other instruments from which he can derive any information which will enable him to better protect his interests and perform his duties. *Stone v. Kellogg,* 165 Ill. 192, 46 N. E. 222.

It is vigorously contended on the part of the respondents that inasmuch as the figures derived from the work sheets and schedule in question have not been carried upon the books of the corporation and have not been adopted by the corporation, they do not constitute a part of the records of the corporation, and that the petitioner, by reason of such fact, is not entitled to an inspection thereof, and that

State ex rel. McClure v. Malleable I. R. Co. 177 Wis. 582.

the court cannot by this proceeding compel an inspection. Furthermore, it is contended that the production of the work sheets and schedule might disclose data which would involve the corporation in serious complications with the federal authorities having in charge the enforcement of the federal income-tax law. ,

The documents referred to were prepared for the benefit of the corporation, at its expense, and, were delivered to its president. It must be conceded that they contain valuable information, which would be of great aid both to the corporation and the stockholders in establishing the real value of the assets of the corporation. This was practically conceded by the defendants, and in fact cannot be logically denied. The reproduction of the necessary information involved in these documents would entail considerable expense and labor. The relator, being the owner of more than one-fifth of the capital stock of the corporation, has borne a share of the expense in the production of these documents in proportion to the number of shares held by him in the corporation to the total corporate stock. The court found that relator's object in seeking inspection was based upon a legitimate purpose, namely, to enable him to ascertain the true value of his stock and to prepare him for the making of a righteous income-tax return so that he may discharge his duties towards the federal government upon the sale of his stock. So that the reasons for a denial of an inspection in any event, under the authorities, do not exist in this particular case.

The liberal view pertaining to the subject of inspection, as expressed in *State ex rel. Bergenthal v. Bergenthal,* 72 Wis. 314, 39 N. W. 566, and *In re Citizens S. & T. Co.* 156 Wis. 277, 145 N. W. 646, is persuasive that this court, in harmony with the decisions of other courts above referred to, has taken the view that sec. 1757, Stats., does not abridge the right of inspection as it existed at common law, but rather has enlarged and extended it by removing

some of the common-law limitations, and that such statute is an affirmance of the common law; and it having been held in *State ex rel. Dempsey v. Werra A. F. Co.* 173 Wis. 651, 182 N. W. 354, that under said section a stockholder has an absolute and unconditional right of inspection, regardless of the motive inducing him to desire it, we are constrained to hold that notwithstanding the difficulties and troubles, if any, which might result from a disclosure of the improper bookkeeping referred to and the illegal tax returns made, such fact can have no hearing upon the right of the petitioner to an inspection.

The judgment of the lower court is therefore reversed, with directions that a peremptory writ of *mandamus* issue in accordance with the prayer of the relator.

*By the Court.*—It is so ordered.

A motion for a rehearing was denied, with $25 costs, on July 8, 1922.