# Joseph M. BELTH, Plaintiff-Appellant,

### v.

## AMERICAN RISK & INSURANCE ASSOCIATION, INC., Defendant-Respondent.†

### Court of Appeals

*No. 86–0366. Argued June 3, 1987.—Decided August 13, 1987.*
(Also reported in 413 N.W.2d 654.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

---

For the plaintiff-appellant there were briefs by *Frank M. Tuerkheimer,* of Madison, and *John Cary Sims, Alan B. Morrison* and *Patti A. Goldman,* of counsel, all of Washington, D.C., and oral argument by *Patti A. Goldman.*

For the defendant-respondent there was a brief by *Stuart G. Mondschein* and *Wheeler, Van Sickle, Anderson, Norman & Harvey, S.C.,* of Madison, and oral argument by *Stuart G. Mondschein.*

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.   Joseph Belth appeals from a summary judgment dismissing his action against the American Risk and Insurance Association (ARIA). He sued to gain access to the contents of a legal opinion given to the association which he claims led to a decision not to publish his article in its journal.

Both parties moved for summary judgment. Their pleadings raise and join the dipositive issue of whether the corporate records law, sec. 181.27(1), Stats., requires disclosure of the opinion. The affidavits filed

with the motions indicate the existence of a *prima facie* case for relief and a defense, and they disclose no material factual disputes. Summary judgment is thus an appropriate means of resolving the legal issue. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). We hold that sec. 181.27(1), Stats., does not require the association to disclose the attorney's opinion to Belth, and we therefore affirm the judgment.

ARIA is a Wisconsin nonstock membership corporation created to promote the study of risk management and insurance. It pursues this end primarily through publication of a scholarly periodical, *The Journal of Risk and Insurance.* The association's membership is composed largely of insurance professors and others interested in insurance education.

Belth is a professor of insurance at Indiana University. He is an ARIA member and a former president of the association, and he has written many articles for its journal over the years. In 1982, Belth discovered a number of similarities between the text of a book on insurance and material previously published elsewhere. He prepared an article for possible publication in the *Journal* discussing the similarities and criticizing the book and its author.

Initially, the *Journal's* editor, who has primary responsibility for editorial decisions, and the editorial staff—ten ARIA members appointed by the editor—voted to run Belth's article in an upcoming issue, even though it was not the type of material they normally would publish. However, after receiving a letter from the book author's attorney suggesting that the article might be libelous, the ARIA board sought and obtained an opinion on the subject from its legal counsel.

Based on that opinion, the board directed the editor not to publish Belth's article.

Belth then published the article in his own insurance journal, suggesting in the text that the ARIA had been "intimidated" into rejecting his article in the first place. In response to Belth's criticisms, the ARIA board circulated to its members and other readers of the *Journal* a memorandum discussing the reasons for rejecting Belth's article. The memorandum included a reference to the opinion received from the ARIA attorney:

> A 20-page legal opinion was received. It pointed out that a reasonable cause of action could be brought against the Editor, the Editorial Board, the ARIA Board of Directors, and ARIA. In short, ARIA could be sued, possibly with successful results, if the note were published in the [*Journal*].

Belth then requested permission from the ARIA to inspect the legal opinion and several other documents relating to the board's decision not to publish his note. The request was made pursuant to sec. 181.27(1), Stats., which provides in part:

> Each corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its members, board of directors and committees having any of the authority of the board of directors; and shall keep at its principal office or at the office of its secretary a record giving the names and addresses of members entitled to vote, or records showing where such information can be obtained. ... All relevant books and records of a corporation may be inspected by any member, or his agent or attorney, for any proper purpose at any reasonable time.

The association denied Belth's request and he sued to compel disclosure.

Both parties moved for summary judgment. The trial court rejected Belth's claim that sec. 181.27(1), Stats., required disclosure of the materials, holding, *inter alia,* that they were outside the scope of the statute. On appeal, Belth argues only that he was improperly denied the right to inspect the legal opinion. He does not pursue his claims with respect to the other documents, and we do not address them. *See Reiman Associates v. R/A Advertising,* 102 Wis. 2d 305, 306 n. 1, 306 N.W.2d 292, 294 (Ct. App. 1981).

The issue is one of law, which we consider *de novo,* without deference to the trial court's decision. *Green Scapular Crusade v. Town of Palmyra,* 118 Wis. 2d 135, 138, 345 N.W.2d 523, 525–26 (Ct. App. 1984). Because we believe the legal opinion to be beyond the reach of sec. 181.27(1), Stats., although for different reasons than those suggested by the trial court, we affirm.

Section 181.27(1), Stats., gives ARIA members the right to inspect "all relevant books and records" of the association "for any proper purpose." The association, pointing to the opening words of the statute requiring corporations to maintain complete and accurate "books and records of account" (in addition to other specified records), would limit the materials subject to inspection to books and records of account. We do not believe such a narrow interpretation is warranted, however.

The portion of the statute allowing inspection authorizes access to *all* books and records of the corporation, so long as such access is relevant to a proper purpose. A related statute in the business

corporation law uses essentially identical language in the section requiring that certain records be maintained: "Each corporation shall keep correct and complete books and records of account and ... minutes of the proceedings of its shareholders and board of directors ... [and] a record of its shareholders ...." Sec. 180.43(1), Stats. The shareholder access provision, however, allows inspection (for any proper purpose), not of "all" of the corporation's books and records, as in sec. 181.27(1), but only "its relevant books and records of account, minutes and record of shareholders ...." Sec. 180.43(2)(a). Thus, where the legislature wanted to restrict access to business corporation records by limiting the right of inspection to the items specifically stated in the statute, it did so. In sec. 181.27(1), however, it did not. Instead, it opened up *"all"* books and records of nonstock corporations to member inspection, so long as the inspection is relevant to a proper purpose.

The terms "proper purpose" and "relevant" are not defined in the statute. It has been suggested, however, that a "proper purpose" within the meaning of sec. 180.43, Stats., is "a reasonable purpose germane to a shareholder's status as a shareholder." *A & K Railroad Materials v. Green Bay & W.R. Co.,* 437 F. Supp. 636, 645 (E.D. Wis. 1977), citing *State ex rel. McClure v. Malleable I. R. Co.,* 177 Wis. 582, 187 N.W. 646 (1922). Belth and the association agree that the definition is appropriate, as do we.

In *McClure,* the court stated that the common-law right of inspection (which it noted was "affirm[ed]" by the enactment of the predecessor to sec. 180.43, Stats.), extended to records "from which [a shareholder] can derive any information which will enable him

70

to better protect his interests and perform his duties."
*Id.* at 586, 187 N.W. at 647–48.

> Such right of inspection at common law cannot be
> denied to a stockholder who makes a demand or
> request in good faith, with the view of protecting
> his interests in the corporation and of ascertaining
> not only the condition of the corporation but to do
> such things as may be necessary for the protection
> of his corporate interests; although it has been held
> that the right will not be enforced by courts for
> speculative purposes or to gratify idle curiosity
> when the interests of the stockholder and his
> protection are not involved. *Id.* at 585–86, 187
> N.W. at 647. [Citations omitted.]

Belth argues that the purpose for which he seeks
disclosure of the legal opinion is relevant and germane
to his status as a member of the association because
"member [should] be informed about [an] incident in
which, under threats of litigation, the ARIA board of
directors changed its policy of not interfering with
editorial decisions and specifically directed the *Journal* editor not to publish an article ...." We disagree.

Belth discussed the reasons underlying his request in an affidavit filed in support of his motion for
summary judgment and in a deposition made part of
the record by ARIA's cross-motion. In the affidavit, he
stated generally that he wanted to determine for
himself whether the board acted in the best interests
of association members when it refused to publish his
note, and that to make this determination he desired
to "investigate the nature and quality of the legal
advice given to the ARIA ... to [see] whether the
$1,200 spent [for the] advice ... well served ARIA

members." He expanded on his reasons in his deposition:

> [I]t is important ... to see the extent to which the Board accurately described the legal opinion to its membership, and to see what kind of reasoning was used by the attorney who prepared the ... opinion.
>
> . . . .
>
> I ... simply do not know whether ... the attorney's reasoning was sound or ... unsound, until I have an opportunity to review the document.
>
> . . . .
>
> It may take a careful reading of the opinion and possibly consultation with [one or more] attorney[s] to evaluate the kind of legal advice that the Association received.

The substance of the association's attorney's opinion had been disclosed to the membership and to readers of the *Journal* in the board's memorandum explaining its reasons for refusing to publish Belth's article. In a nutshell, the attorney's advice was that publication of the article might give rise to a defamation suit against the association, and that such a suit might have a reasonable chance of success. Belth's affidavit and deposition, and his argument to this court, make it clear that he seeks disclosure of the opinion in order to test the quality of its legal analysis and scholarship.

We see no reasonable relationship, no relevance, between such a request and Belth's status as an ARIA member. The commonly understood meaning of the term "relevant" is "having significant and demonstrable bearing upon the matter at hand"; it is synonymous with "germane," which is the state of "being at

once relevant and appropriate." *Webster's New Collegiate Dictionary,* at 976, 482 (1977). The reasons for the board's action were disclosed to the membership and discussed at length in its explanatory memorandum following publication of Belth's article in his own journal. The substance of the legal advice upon which, in whole or in part, the rejection decision was made was also disclosed. Belth has not persuaded us that allowing him the opportunity to make his own assessment of the quality of the underlying legal analysis which led to the rendering of that advice is relevant or germane to any proper purpose within the meaning of sec. 181.27(1), Stats. As a result, he has no right to inspect the legal opinion and the trial court properly dismissed the action.

*By the Court.*—Judgment affirmed.