## STATE ex rel. JOHNSON, Relator, v. ST. LOUIS TRANSIT COMPANY et al., Respondents.

**St. Louis Court of Appeals, March 19, 1907.**

1. **CORPORATIONS: Stockholders: Right to Examine Books.** A stockholder in a corporation has a right to examine its books and records at reasonable times and in such manner as not needlessly to annoy the officials of the corporation or interfere with the transaction of business, though the right can not be exercised for a malicious or frivolous purpose.

2. ————: ————: ————: **Mandamus.** Mandamus is the appropriate remedy for the enforcement of the right of a stockholder to examine the books of the corporation.

3. ————: ————: ————: **Stenographer and Accountant.** The right of a stockholder to examine the books of a corporation carries with it the right to employ an accountant and a stenographer for the purpose of making extracts and memoranda from the books.

Original Proceeding by Petition for Writ of Mandamus.

PEREMPTORY WRIT AWARDED.

*John A. Gilliam* for relator.

(1) Relator is a stockholder and he is therefore by statute and common law entitled to examine the books and records of the company. R. S. 1899, sec. 966. Relator must have a clear legal right, and no other specific legal remedy. Williams v. Judge of Cooper Court, 27 Mo. 227; Sheridan v. Fleming, 93 Mo. 325. Such remedy must be plain, speedy, adequate, not doubtful, and it must be competent to afford relief upon the very subject-matter of his application. State v. Wright, 10 Nevada 167; Fremont v. Cripper, 10 Cal. 211; Williams v. Clayton, 6 Utah 86; Lewis v. Whittle, 77 Va. 415; Harwood v. Marshall, 9 Md. 83; Page v. Clopton, 30 Grat. 415, and other cases cited under section 3, column 2056.

33 American Digest. (2) As relator has the right to examine all the books and records of said transit company, he is not required to specify. State ex rel. v. Laughlin, 53 Mo. App. 546. (3) Defendant's Fifth Point: Because said petition does not show for what purpose the said relator demanded the privilege of an examination of the books and records of said St. Louis Transit Company. Answer: It is not necessary. State ex rel. v. Railroad, 29 Mo. App. 307. Stockholder has the legal right to examine all books and records. State ex rel. v. Sportsman's Park, 29 Mo. App. 326; R. S. 1899, sec. 966.

*Boyle & Priest, T. E. Francis* and *George T. Priest* for respondent.

(1) The writ, and the petition upon which it is founded are fatally defective, in that it is not shown therein that the relator had a specific purpose in view in respect of which an examination of the books was necessary, nor that he had a proper motive of inspection. High's Extraordinary Legal Remedies, sec. 310; Lyon v. Screw Co., 16 R. I. 472, 17 Atl. 61; Commonwealth v. Iron Co., 105 Pa. St. 111; State ex rel. v. Paint Co., 21 Mo. App. 527. (2) The writ and petition are likewise defective for the reason that they do not show that the relator made a demand to inspect the books at a reasonable and proper time, during regular business hours, and for a sufficient reason. Foster v. White, 86 Ala. 467. (3) The writ and petition are defective for the further reason that they do not set forth the particular books and records that relator desires to inspect. Bishop v. Walker, 9 Mich. 328.

GOODE, J.—This is an original proceeding by mandamus against the St. Louis Transit Company, a domestic street railway corporation, and James Adkins, its secretary and treasurer and custodian of its books, to compel respondents to permit relator to inspect the books and records of said transit company. The amended alternative writ alleges that relator Johnson, on June 15,

1906, and other dates mentioned in the writ, was a shareholder in said company, owning one hundred and ninety eight shares of its capital stock; that said company is incorporated under the laws of the State of Missouri, and relator, as a stockholder, is entitled, under said laws, to examine its books and records personally, or by duly authorized agents and is entitled to have the books and records examined by an expert accountant, assisted by a stenographer, to take proper memoranda. It is further alleged that on June 15, 1906, relator sent his agent, John V. Hogan, during business hours to the office of said company; that said agent requested Adkins, then secretary and treasurer of the company and in charge of its books and records, to permit said agent to examine its said books and records, and was refused the right; that afterwards, on June 26, the relator, in company with his said agent Hogan, went to the office of the company during business hours, and demanded of said Adkins an opportunity to examine the books and records and was refused the right to examine them with the assistance of an expert accountant and a stenographer, and refused the privilege of making extracts from the books; that the relator desires to examine all said books and records for the purpose of ascertaining the financial condition of the company, what moneys it has received and what was done therewith; what bonds, stocks and other properties it has received, and what has been done with them; also to ascertain the value of relator's stock in the company and whether the business affairs of the company have been conducted according to law, and to acquaint relator with the conduct and management of its affairs. The writ further charges that the company ceased to do business and to act under its franchises on November 1, 1904, and that just prior to said date it disposed of a great amount of its assets to Brown Bros. & Co. a partnership composed of people who are non-resi-

dents of the State of Missouri, and to the United Railways Company, a corporation of the State of Missouri, and to other parties unknown to relator; that on the last-named date said transit company also distributed a large amount of its assets among its stockholders contrary to law and without the concurrence of relator; that relator has received none of said assets and desires to know who got them and if anything was received therefor; to learn under what resolutions, advertisements, votes and proceedings the assets had been disposed of and whether the same was done according to law; that relator has no way of ascertaining the contents of said books and records by and through the ordinary process of law; that the examination is a complicated one in which he needs the aid of an expert accountant and a stenographer, and the right to make extracts and memoranda, without which aid the examination would be incomplete and fruitless. The command of the alternative writ was that the respondents, the St. Louis Transit Company and James Adkins, should, without further excuse or delay, give relator and such expert accountant and stenographer as he might select, access to and the right, privilege and opportunity to inspect and examine the books and records, to make extracts and memoranda therefrom between the hours of nine a. m. and six p. m. on week days, beginning with the receipt of the writ and to continue until the relator should be able to complete the examination; or that respondents show cause on the date named why they should not permit relator said relief.

A motion to quash the alternative writ was filed, and subsequently respondents filed returns. These answers or returns stated, in effect, that on or about June 25, 1906, relator and J. V. Hogan, his agent, came to the transit company's office and requested the privilege of inspecting the stock books of the company, without stating the purpose for which the privilege was re-

quested; that on the afternoon of said day respondents informed relator that a list of the stockholders of the company had been compiled and on application at the company's office, would be furnished to relator; that on June 26, 1906, J. V. Hogan appeared at the company's office with a letter from the relator requesting the privilege of inspecting the books and records of the transit company as relator's agent; that Adkins, the secretary of the company, asked Hogan what he wished to inspect and was told that it was the stock books; that thereupon the stock books were furnished Hogan, together with a typewritten list of the stockholders. The return avers that at no time did relator in person or by his agent, demand to see any of the books of the company except the stock books and at no time has relator, either in person or by his agent, stated to respondents the purpose for which he desired to inspect any of the books. For this reason it was prayed that the alternative writ be quashed and respondents allowed their costs. A commissioner was appointed to take evidence in the case, which has been done, and the evidence is before us. It is somewhat conflictng as to the extent of the demand made by relator for an examination of the books, and also as to the scope of the examination conceded to him by respondents. Hogan, who was employed to act for relator in the matter, testified to taking a letter to Adkins at the office of the transit company, on June 15, 1906, with a request for an examination of the books. Adkins said he would have to consult the counsel of the company about the matter before deciding it; that on June 26 relator and Hogan went to the office of the company and demanded to see the books; that Adkins said he had no authority to show them and that the general counsel of the company was out of the city and nothing could be done until he returned; that on June 29 Hogan again went to the office and asked to see the transfer books, which were shown to him and when he began tak-

ing notes from them, he was given a full list of the stock-holders; that on December 6, 1906, Hogan and Geo. W. Curry, another employee of Johnson, went to the office of the company and demanded permission to go on with the examination; but their demand was refused by Adkins on the score that he could not act without consulting the attorney of the company, who was not in the city and would be absent for a week or ten days. This was after the alternative writ had been issued. It appears that on the preceding day, December 5, Curry had gone to the office with a letter from relator which demanded an examination of all the books and the right to make extracts from them, stating that the purpose of the examination was to ascertain the financial condition of the company and other things, in substantially the same words used in stating the purpose in the alternative writ. Curry was refused for the same reason given to Hogan. Johnson himself testified that when he went with Hogan on June 26, he was refused the right of inspection except on an order from the counsel of the company. Hogan said he started on the transfer book, but ceased work on it after being given a list of the stock-holders; that on June 29 when this list was given, he did not attempt fully to exercise the authority conferred on him by the relator to examine all the books. Curry swore he went to the transit company's office on December 5 with a letter from relator and asked permission to examine the books and records of the company, delivering to Adkins the letter of relator. An offer was made to prove by this witness that Adkins refused to let him see the books without an order from the company's attorney, but this testimony was excluded by the commissioner and we do not find it in the record, though we directed its admission. After the first refusal on June 15, to permit an inspection of the books until the secretary had received permission from the company's counsel, the attorney for relator wrote said counsel

of the transit company, who was absent from St. Louis, advising him of relator's desire to inspect the books and of the secretary's refusal to permit the inspection unless permission was granted by the company's counsel, and notifying said counsel that a suit would be brought to compel inspection unless this was done. No reply was made to this letter. When the demand was made again on June 26, the general counsel of the company was in St. Louis, and at that time a conversation occurred regarding the matter between him and relator's counsel over the telephone. Those gentlemen disagree as to what was said in this conversation and it was easy for them to misunderstand each other in talking over the telephone. Relator's attorney testified that counsel for the transit company consented to relator's examining the books and records, but refused to allow the use of an expert accountant or a stenographer or to permit extracts and memoranda to be made. The attorney for the transit company testified he agreed relator might use an expert accountant in the examination, and that the accountant might take notes, but refused to permit the use of a stenographer. His reason for refusing permission for a stenographer to take notes was that, in his belief, no proper purpose could be subserved thereby, and that the object of making copies of the records must be to use them in an attempt to injure the company by vexatious litigation. Johnson, the relator, had a suit pending at the time in the St. Louis Circuit Court to set aside the transaction of November 1, 1904, in which the transit company is charged to have transferred all its assets to Brown Bros. & Co., and the United Railways Company. Moreover, Johnson had purchased and held various judgments which had been rendered against the transit company. He testified that he wished to examine the books of the company in order to ascertain whether the transaction of November 1st was lawful, the consideration for it, the disposition made of the moneys

and property of the company and generally to ascertain how its business had been conducted, whether its dealings were legal, and if his rights as a stockholder had been protected.

The common law gave relator, as a stockholder of the transit company, the right to examine its books and records at reasonable times and so as not needlessly to annoy the officials of the company or interfere with the transaction of business. This proposition is sustained by numerous well-considered cases and by all the treatises. [Richardson v. Swift, 7 Houst. (Del.) 137; Swift v. Richardson, Id. 338; In re Steinway, 159 N. Y. 250; Guthrie v. Harkness, 199 U. S. 148; Huylar v. Gragin Cattle Co., 40 N. J. Eq. 392; Bank v. Hunt, 76 Mo. 439; State ex rel. v. Laughlin, 53 Mo. App. 542; 2 Cook, Corporations (5 Ed.), sec. 511; 1 Beach, Corporations, 75.] When the right does not rest on a statute, it is not absolute, nor to be exercised for a malicious or frivolous purpose. [2 Cook, Corporations, sec. 515.] An appropriate remedy for the enforcement of the right is mandamus. [Authorities, supra.] Respondents do not contest this proposition, but assert that the relator's demand for inspection was complied with to the extent it went; that is to say, that he was not refused an inspection of such books as he asked to see. Also that he did not state his purpose in wishing to see the books. We do not hold such statement need be made to the custodian; but if essential, it was waived in this case. The evidence for both sides shows respondents did not put their refusal on that ground. Indeed, they did not refuse to show the books, but only to permit the relator to avail himself of a stenographer, or, at most, of an accountant, too. According to the testimony for respondents, relator was conceded the privilege of making extracts and memoranda from the books and records, but was denied permission to use a stenographer in making them, which was part of his demand. This was equivalent to grant-

ing him a right and denying him the most convenient mode of exercising it. We have found no case in which it was not held that the stockholder might make minutes of whatever portions of the books and records of the company he desired, and several cases in which the right to do this was upheld. [Commonwealth v. Phenix Iron Co., 105 Pa. St. 111, 116; Elsworth v. Dorwort, 95 Ia. 108, 112; Martin v. Johnston & Co., 17 N. Y. Supp. 133; Corheal v. Brouwer, 5 N. Y. 562; State ex rel. Richardson, v. Swift, supra.] In the Iowa case the use of a stenographer was sustained and we can see no reason why it should not be. That an expert accountant may be used is conceded by respondents and, indeed, is undeniable; because most shareholders would be incapable of understanding the records and books of an extensive business without giving unreasonable time to the study of them.

The reasons alleged in the alternative writ and sworn to by relator for desiring to inspect the books, were among those ruled in the foregoing authorities to be sufficient. Of course a shareholder must exercise the right in a proper manner and at proper times. The evidence shows the requests for inspection were made during the business hours of the company, and nothing that appears points to the conclusion that the inspection will be conducted so as to be unduly harassing or the information obtained utilized for bad purposes.

The motion to quash the alternative writ will be overruled and a peremptory writ awarded. It is so ordered. All concur.