**STATE of Missouri ex rel. John S. JONES, Relator-Appellant,**

v.

**RALSTON PURINA COMPANY, a Missouri corporation, and Lewis B. Stuart, Respondents.**

No. 30573.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied March 24, 1961.

Paul Brackman, William J. Oetting, Brackman, Oetting & Brackman, Clayton, for appellant.

R. H. McRoberts, Bryan, Cave, McPheeters & McRoberts, St. Louis, for respondents.

BRADY, Commissioner.

This cause comes to us on appeal from a judgment of the Circuit Court of St. Louis County quashing an alternative writ of mandamus. The relator, hereinafter referred to as the appellant, sought a peremptory writ of mandamus against the respondents, Ralston Purina Company, a Missouri corporation, hereinafter referred to as the company, and Lewis B. Stuart, the chief financial officer and custodian of the books and records of the company, hereinafter referred to as Stuart. Trial was in July, 1959, and the decision was rendered on December 1st of that year. Following the overruling of after trial motions on March 8, 1960, notice of appeal was filed. An extension of time to file the transcript was requested and granted, and we heard this cause on November 10, 1960.

It appears from the application for the writ that in August, 1958, the appellant requested of Stuart, during usual business hours and at his office, that he be allowed to examine and inspect " * * * the books and records of said corporation including specifically but not limited thereto certain reports and records known as No. 1, 'The Preliminary', No. 2 'The Profit Analysis', and No. 3, 'The Balance Sheet' * * * ", and that the request was denied; that this request was denied by Stuart each time it was made by the appellant, either in person or in writing or by his attorneys for him. The petition alleged that such denials and refusals were wrongfully made, and were in direct violation of § 351.215 RSMo 1949, V.A.M.S., which was set out verbatim therein, and that the appellant was without an adequate legal remedy. The prayer was that the court issue its alternative writ commanding the company by its officers and directors " * * * to produce and exhibit to the relator the books and records of said corporation for his examination; and further to permit the relator to make copies thereof with the aid and assistance of expert accountants, stenographers and attorneys of his choice; and further that respondent Lewis B.

Stuart forfeit the sum of $750.00 to relator; * * *" or show cause why they should not do so, and for the writ to be made permanent upon a hearing, and for such other and further relief as should seem meet and proper in the premises. The alternative writ was ordered issued and served.

By their joint return, the respondents admitted all the allegations of the petition except that they stated the only papers demanded by the appellant or his attorneys were those three known as "The Preliminary", "The Profit Analysis" and "The Balance Sheet" and they denied that their actions violated § 351.215, supra, and that the appellant had no adequate remedy at law. The respondents' return then set forth that the company is a large concern operating in forty-eight states and made certain other allegations dealing with the size and extent of the company which in view of our disposition of this case it is unnecessary to set forth herein; that the books and records of the company are varied and voluminous and are kept in many other parts of this country and other countries in the world, although the principal books and records are kept in St. Louis; and that "they" have a fiduciary relationship to the stockholders of the company to preserve the books and records of the company and to see that they are not used or allowed to be used for any improper purpose or in any manner detrimental to the stockholders' interests. The return then defines these three papers to be substantially as they are found to be by the trial court as set out later herein. The respondents further stated that said memoranda referred to hereinabove were no part of the books of the company to which shareholders have a right of access pursuant to the provisions of § 351.215, supra. The respondents' return then goes on to set forth what is meant by their allegation of the fiduciary relationship "they" bear to the shareholders by stating that while they "* * * do not believe and do not have any reason to believe * * *" that the

appellant is going to make any improper use of the information he would gain by such an inspection, still, if they are compelled to allow appellant to so inspect, then so must they allow other shareholders to do the same "* * * including (with reasonable certainty in view of the number of shareholders of the Company) stockholders whose purpose will be to obtain 'insider' information and to trade on the same to the detriment of other shareholders of the Company." The respondents' return then sets out another reason why they urged the trial court to exercise its discretion in their favor by denying the writ in that the company was then in the process of offering stock for sale to the public pursuant to a registration statement and prospectus prepared as required by the provisions of the Securities Act of 1933, as amended, 15 U.S.C.A. § 77a et seq., and the rules and regulations of the Securities and Exchange Commission of the federal government and that the Securities and Exchange Commission "* * * in its releases and in its activities in enforcing the provisions of said Act and the policies embodied therein frowns upon the dissemination of any information which might operate to produce an artificial stimulation of the market, and particularly the use in connection with the sale of securities of estimates of future earnings; * * *" and alleged that since, among other things, these papers sought to be inspected by the appellant contain estimates of future earnings, the dissemination of such might lead to the suspension by the Securities and Exchange Commission of the company's right to sell stock. The return then alleges that the writ as requested by the relator is directed generally to all books and records of the company and this is so vague and indefinite, in view of the varied location and number of records, that the respondents would be physically unable to comply therewith. The respondents further urged that the appellant had an adequate remedy at law and that he be left to "* * * such action, if any, as he may have for damages."

In view of our determination of this matter, it will be unnecessary to set out at length the testimony offered on behalf of the appellant, who was his only witness, nor that given on behalf of the respondents which consisted of that of Stuart and of a Mr. Jackson, the certified public accountant for the company. Jones' testimony described his employment with the company, the fact that he had received access to these three documents since his retirement until the present controversy arose; the requests he made to be allowed to continue his inspection of these documents and the minutes of the board of directors' meeting for January, 1958, and the refusal by Stuart and the company to allow him to do so. His definition of these documents was substantially the same as that given by Stuart and as found by the trial court, except that he made no statement that they constituted interoffice memoranda. He testified that he understood these documents and that they would show him how his investment was coming along so that he could determine whether or not he should retain his investment in the company, and that this was his reason for wanting to see these documents. The other specific parts of his testimony and that given by Stuart and Jackson having a direct bearing on our decision herein will be stated under the point involved.

Stuart's testimony went generally to the affirmative matters stated in the return. To the definition of these three documents he added the term "interoffice memoranda", and further testified that they constitute analyses or studies of the books of account, the form of which cost a great deal to develop and which is a part of the know-how of the company, the information contained in which would be extremely valuable to competitors. He further testified that there are about eighteen high ranking officers of the company who receive these documents, all of whom are stockholders; that when he was with the company the appellant did not occupy such a position but saw the reports sent his superior; that without the preparation of these three documents, the job of managing the company would be more difficult; that by looking at them, a person who understood them could determine if things were going in a normal manner or not; that the company had received complaints and there was jealousy because appellant received these reports; that while appellant was receiving these reports another retired employee also did so, and "The Balance Sheet" went to still another retired employee, both of whom were refused access when the appellant was. Stuart's further testimony was that the company has had, during the time the appellant was making his requests to inspect, a stock purchase plan available for its employees as a result of a registration statement with the Securities and Exchange Commission under the Securities Act of 1933 covering some 75,000 shares of common stock offered to the employees under the stock purchase plan; that the management feels that the earnings figures, profits and losses from month to month, and estimates of future earnings have an effect upon the market of its stock, and that the management had been criticized when that information got out to one and not to another; that knowledge of the information contained in these documents, if it becomes known, would, for example, help chain store operators, who are powerful buyers, " * * crowd down our prices"; and that this would especially be true of the items which the company makes up under the private label of two or three chain stores; that, for another example, the company in the year before trial had wanted to control more soybean production, and knew that Proctor & Gamble had such soybean meal production available, but if Proctor & Gamble had known of these figures, they would have known that the company's soybean meal operation was substantially more profitable than theirs, and thus would have been much harder to deal with, which could have meant millions of dollars difference in the price ultimately negotiated; that, for another example, the fact that such figures would disclose that very little capital

is required to go into the sanitation farm supply business would certainly invite additional competition into an already highly competitive field. The witness went on to give other specific examples of why such information as contained in these reports is highly confidential, such as that in the chow division, the values and deficiencies of their plants' locations would become known; that in one instance, knowledge of the difficulties that the company was having in one plant location and area would, in his opinion, result in the cooperative which is its highly active competition in that area and which enjoys certain tax advantages becoming more aggressive; that, as to another plant, there is a bad debt situation that, if known, would be very damaging. With regard to the examination of the minutes requested by appellant, Stuart's testimony was that the policy statement as to anyone other than top management viewing these three reports did not appear in the minutes of the board meeting, but did appear in the minutes of the management committee, and that the management committee reported their action to the board of directors which approved of it, though not by recorded vote.

The only other witness was Ben Franklin Jackson, the senior partner in the St. Louis office of the firm that audits the company's books. His testimony was that he was familiar with these three documents and that having access to them would aid a person who understood them to determine how the company was doing and operating now and in comparison with prior years; that these documents would be of considerable value to a competitor; that the books of the company kept at the St. Louis office are the private ledger, the general ledger, the accounts receivable ledgers, stock ledgers and cash receipts books, prorate ledger, cash disbursement books and a private ledger for each of the plants, divisions and subsidiary companies. He testified as to what was contained in each of these books. Over objection he testified that in his opinion these three papers do not constitute a part of the books or books of account of the company, as that term would be understood by the accounting profession, because an examination of these reports would not be necessary for their certification of the books of the company. Jackson also testified that at each plant of the company, books are kept which reflect the operations only of that plant and which generally parallel those kept in St. Louis, and that while the three documents may also contain some other information, generally information is taken from these books, sent to the home office where it is assembled on work sheets and later transferred to the form of these three documents.

The trial court made certain findings of fact and conclusions of law which it commendably set forth in a memorandum opinion. It found "The Preliminary" to be a preliminary profit and loss statement containing an estimate of future earnings compiled from the profit and loss balance sheets of the individual plants, products and divisions of the company prepared from the records of the company to assist the accounting department to establish the income tax rates of the company, and for the information of certain of its executive officers, and was subject to check and verification, analysis and adjustment. "The Profit Analysis" was found to be a breakdown of income and expense of every separate mill, plant, product, and division of the company's business on a monthly basis, cumulatively, and with comparative figures from the preceding years; that this report contains the volume of business, costs of materials, discounts on purchases, number of units sold, and other related matters, and is distributed to certain executive officers of the company after being prepared from the profit and loss balance sheets of each operation and from sources other than the books of account of the company. "The Balance Sheet" was found by the trial court to be a handwritten preliminary trial balance sheet, prepared on a monthly basis, from the balance sheets

forwarded to the home office from the many plants and divisions through the world; that this paper is prepared from current, preliminary, unverified and unaudited figures taken from the trial balance sheets and shows the book value of the common stock at stated intervals, the amount of cash on hand, the amount invested in government bonds and the profit and loss in foreign departments, and that this paper is also prepared for the information and guidance of certain top level executive officers of the company. The trial court also found that each of these reports had limited distribution among the executive officers of the company and that they were considered by the corporate officers to be confidential interoffice memoranda for information and planning value only; and that several demands to see these papers had been made by the appellant and that he had been refused such permission.

The trial court found in its conclusions of law that the appellant's action was under the statute only, and not under the common law; that these three papers are not books and records of account within the meaning of those terms as they are found in § 351.-215, subd. 1, supra; that the right of inspection is not an absolute right, and that since the writ of mandamus is a discretionary writ the appellant had the burden of showing the court at least one of the following reasons for the exercise of its discretion: that without the right to inspect and examine these reports his financial investment would be in danger; that there were no other records available to him from which he could obtain the same information contained in the reports after the validity of the information contained in the reports had been verified; that appellant was engaged in any other litigation with the company and that this information was necessary in the preparation of his case; that there was any internal dissension within the company or mismanagement or misappropriation of funds; that the appellant failed to do so.

In that portion of the brief devoted to and entitled "Points and Authorities", the appellant raises three points, the first of which has three subpoints. Only the third point complies with Civil Rule 83.05, V.A. M.R., in effect when the brief was filed. The other points and subpoints all violate that portion of that rule which provides that,

> " * * * Setting out only abstract statements of law without showing how they are related to any action or ruling of the Court is not a compliance with this rule."

Care should be taken lest such a failure lead to dismissal; Walker v. Thompson, Mo., 338 S.W.2d 114. However, it can be ascertained that appellant's contentions are, first, that the trial court erred in its conclusions of law that these three documents or papers or records known as "The Preliminary", "The Profit Analysis" and "The Balance Sheet" are not books and records of account within the meaning of those terms as found in § 351.215, supra. As subpoints thereof, he urges that in seeking to exercise this right of inspection the stockholder is attended by a presumption of good faith and honesty of purpose which those seeking to deny inspection have the burden to overcome and that neither the right of nor the scope of appellant's inspection can be restricted or limited by the action of the board of directors or officers of the respondent corporation or by substitution of some other method of informing the stockholder. Appellant's second point is that the trial court erred prejudicially in not awarding him the $750 for which he prayed. His third contention on appeal is that the trial court erred in overruling his objections to the testimony of Jackson.

■■ Mandamus is a legal, and not an equitable remedy, and its function is to adjudicate, adjust or ascertain the mutual rights between the parties, and its office is to execute or enforce a clear and plain

duty, and if the right is doubtful, it must first be established before mandamus will issue. State ex rel. Watkins v. Donnell Manufacturing Co., 129 Mo.App. 206, 107 S.W. 1112; State ex rel. Walton v. Miller, Mo.App., 297 S.W.2d 611; State ex rel. Coffman et al. v. Crain, Mo.App., 308 S.W. 2d 451. It has long been the law in this state that mandamus is the proper remedy for an action by a stockholder to enforce his right to inspect, and indeed, the respondents do not otherwise contend, but urge that the writ of mandamus should not be issued under the factual situation of their case. Our first inquiry will be as to whether or not the appellant's right to examine these three documents is established, and then, if the right is established, determine whether or not the trial court prejudicially erred in refusing the appellant the assistance of its peremptory writ.

 Does the appellant have an established right to inspect these three documents? The answer must depend upon whether or not these were a part of the "books" of the company, which in turn requires a construction of § 351.215 RSMo 1949, V.A.M.S., which reads as follows:

"1. Each corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its shareholders and board of directors; and shall keep at its registered office or principal place of business in this state books in which shall be recorded the number of shares subscribed, the names of the owners of the shares, the numbers owned by them respectively, the amount of shares paid, and by whom, the transfer of said shares with the date of transfer, the amount of its assets and liabilities, and the names and places of residence of its officers, which books shall be kept open for the inspection of all persons interested. Each shareholder may at all proper times have access to the books of the company, to examine the same, and under such regulations as may be prescribed by the bylaws.

"2. If any officer of a corporation having charge of the books of the corporation shall, upon the demand of a shareholder, refuse or neglect to exhibit and submit them to examination, he shall, for each offense, forfeit the sum of two hundred and fifty dollars. (L.1943 p. 410 § 48) Mo.R.S.A. § 4997.48."

The general guides for statutory construction are well known. The basic rule is that we are to seek the intention of the lawmakers and to do so from the words used, if possible; ascribing to the language used its plain and rational meaning and giving significance and effect to every word, phrase, sentence and part thereof, if in keeping with that intent. State ex rel. Wright v. Carter, Mo., Banc, 319 S.W. 2d 596. Having these guides in mind, it is clear 'that the purpose the legislature sought to accomplish by the enactment of this statute was threefold. First, the purpose was to require a corporation to keep complete and correct books, records of account, and minutes. Second, certain of these books were required to be kept at the corporation's registered office or principal office of business in this state, and these are set out in the second clause of subsection 1. Third, by the last sentence of subsection 1, § 351.215, supra, the legislature required that the books of the company are to be available to the stockholders for their examination.

 Having determined the purpose and intent of the statute, the very wording and organization of it requires us to reject the contention that the term "books" as used in the last sentence of subparagraph 1 is in any way limited to, or by, those books containing the matters enumerated in the clause preceding the sentence and required to be kept at the principal place of business or registered office of the company in this state. We are buttressed in this construction of the statute by the placing

of the last reference to "books" in a new sentence apart from the matter preceding it, as well as by the fact that the right of inspection of those books required to be kept at the registered office or principal place of business in the state is given to "* * * all persons interested * * *" while the right to inspect the books referred to in the last sentence of subparagraph 1 of the statute is given to "* * * each shareholder * * *", a group not necessarily coextensive with the former. In the case of State ex rel. Smalley et al. v. Sterns Tire & Tube Co. et al., Mo.App., 202 S.W. 459, this court held the same provision, then not separated into a separate sentence and contained in § 3349, R.S. Mo.1909, to include all the books of the company. While we were there confronted with an attempt by those denying inspection to limit the stockholder's right by resolution, the definition of the term equally applies in this case. Each stockholder's right of access to and examination of the "books of the company", as that term is used in the last sentence of subsection 1 of § 351.215, supra, therefore refers to all of the books of the company; that is, to the correct and complete books which the company is required to keep by the first phrase of that same subsection. Now, are "The Preliminary", "The Profit Analysis" and "The Balance Sheet" a part of the books of the company?

■■ The respondent strenuously contends that the appellant sought to assert his statutory right to inspect in the trial, and therefore we must limit our review to the same theory. We have no quarrel with that statement of limitation of our powers of review, but it is not determinative of the issue here involved. At common law, the stockholder's right to inspection was based upon his underlying ownership, whether it be termed equitable, beneficial, or quasi ownership of the corporation's assets and property, and the necessity of such a right for his self-protection. Fletcher, Cyclopedia Corporations, Vol. 5, § 2213, page 749. This common law right extend-

ed generally to all kinds of books of the company. State ex rel. Theile v. Cities Service Co., 1 W.W.Harr., Del., 514, 115 A. 773, 22 A.L.R. 8 at page 12; and see the Missouri cases collected in the annotation at page 26. It has been said that this right to inspect was not absolute at common law, but was qualified or limited by the requirement that the stockholder's motives or purposes for seeking inspection be proper ones, and his request to inspect be made in good faith. State ex rel. Holmes v. Doe Run Lead Company et al., Mo.App., 178 S.W. 298, at page 300; Fletcher, supra, § 2214, page 752 et seq. Whether this statement is exact or whether even at common law the stockholder's purpose was immaterial insofar as his right was concerned and was considered only insofar as whether the court should exercise its discretion to lend him the aid of its writ of mandamus (see State ex rel. Doyle v. Laughlin, 53 Mo.App. 542 at page 547, and the still earlier cases cited at the top of page 548; State ex rel. Watkins v. Donnell Manufacturing Co., supra, 129 Mo.App. 206, at page 208, 107 S.W. 1112) we need not decide. In any event, the stockholder's right at common law was not so absolute that mandamus would issue to enforce it regardless of the facts and circumstances of the particular case. It follows logically from our holding that the basis of the statutory right of inspection is the same as the reason for the existence of the common law right (State ex rel. Watkins v. Cassell, Mo.App., 294 S.W.2d 647, at page 652); from our recognition of the general rule in this country as stated by Fletcher, supra, § 2214 at page 755, that:

"* * * the common-law right obtains as to the books and records not specified or included within the statutory provision, and that the specific mention of certain books and records does not in itself limit the right of inspection to such books and records, or curtail the stockholder's right as to other books and records, or authorize the corporation to prevent examination

of such other books and records at proper times and for proper purposes."

(affirmatively stated by this court in State ex rel. Watkins v. Donnell Manufacturing Co. et al., supra; see also State ex rel. Doyle v. Laughlin, supra); and from the fact that the same rule with reference to the right of a writ of mandamus is followed in cases under the statute as was followed at common law (State ex rel. Watkins v. Cassell, supra), that we follow the majority of our sister states in holding that a stockholder's right of inspection under our statute is supplemental to and an extension of his common law right. This was the rule with respect to a statute preceding this section, State ex rel. Doyle v. Laughlin, supra; State ex rel. Watkins v. Donnell Manufacturing Co., supra. We see no reason it should not be adopted with respect to the present statute which comprises a restatement and combination of several different preceding statutes and which preserves from them the provisions found in the last sentence of subparagraph 1, of § 351.215, supra, in almost identical wording. § 2774, R.S.Mo.1889; § 1322, R.S. Mo.1899; § 3349, R.S.Mo.1909; § 10154, R.S.Mo.1919; § 4943, R.S.Mo.1929; § 5348, R.S.Mo.1939. This provision was first found in Laws, 1864, page 21, § 9, and Laws, 1866, page 66, § 5. Thus this court, in the leading case on the matter in this jurisdiction, State ex rel. Watkins v. Cassell, 294 S.W. 2d 647, at page 652, supra, held that the right of inspection in a case where the right was sought under the provisions of § 351.215, supra,

"* * * extends to all books, records, papers, contracts or other instruments which will enable the stockholder better to protect his interest and perform his duties as a stockholder. (Citing cases.)"

The evidence here clearly establishes that with the aid of the information which the appellant can get from the examination of these three documents he will much better understand the affairs of the company and

thus be in a better position to protect his interests and perform his duties as a stockholder. It follows that "The Preliminary", "The Profit Analysis" and "The Balance Sheet" are therefore within the meaning of the term "books" of the company as that term is used in § 351.215, subd. 1, supra.

The soundness of such holding we think illustrated by the factual situation here presented. The respondents' own testimony was that information is taken from the books kept at each operation and sent to the home office, where it is assembled on work sheets and later transferred to the form of these three documents. Could it be denied that the appellant would have the right to see these books at each plant? We think not. Moreover, Stuart testified that these three documents are in reality analyses or studies of the books of account of the company. Accordingly, appellant is only seeking in a different, more convenient form, obtainable at one place, that which he would be entitled to by proceeding to examine all the books at each operation of the company.

We are not persuaded otherwise by the case upon which the respondents rely. In State ex rel. Holmes v. Doe Run Lead Co., supra [178 S.W. 299], this court had before it an original proceeding in mandamus. The alternative writ commanded inspection of "* * * all the books and records of said Doe Run Lead Company, including the stock book, transfer book, cash book, journal, ledger, correspondence and papers * * *". (Emphasis supplied.) There was also reference in the alternative writ to "records" and "records and documents." The alternative writ was amended by those seeking its application by striking out the words, "records", "correspondence and papers" and "records and documents." The court stated, 178 S.W. 298, at page 300 that the allegations of the alternative writ later deleted by amendment were beyond the provisions of the statute then in force, § 3349, R.S.Mo.1909. (This section continued in our statutes in the same form until its

repeal and reenactment in different form by this section: see Laws of 1943, page 410.) However, since only the amended writ was before the court, such a statement can only be considered as dictum even if we were to assume, which we do not, that the statement would necessarily be applicable to § 351.215, supra. Moreover, the change in punctuation between the 1909 statute and the section with which we are here concerned is significant. The respondents also rely upon the language contained in the opinion of the 7th Circuit Court of Appeals in Cudahy Packing Co. v. United States, 15 F.2d 133, 135, wherein that court held the words, "documents, papers and correspondence" not to be so broad as to include the books of account and records of a company. But the case certainly is no authority for the converse situation with which we are here concerned, i. e., that the books of a company may not also include documents, papers or memoranda of the type with which we are herein confronted. In that case the lawmakers by the use of more restrictive words clearly intended to exclude the broader term. In the case of our statute, the lawmakers chose to use the broader term "books." Such usage we think indicative of the very opposite result than that reached in the Cudahy case.

■■ State ex rel. Watkins v. Cassell, 294 S.W.2d 647, at page 655, supra, also rules the appellant's contention that the attempt by the company to limit appellant's inspection by the resolution of its executive committee approved by its board of directors, and the offer to substitute another report or set of papers for the three which appellant sought to inspect, are ineffectual to diminish the appellant's right to inspect the three documents here involved. In that same case we went on to say, at page 653:

> "Where the statutory right is sought to be enforced the burden of overcoming such presumption should be borne by those objecting to the inspection. (Citing cases.)"

It follows that in requiring the appellant to assume the burden of going forward with the evidence to show the existence of one of the reasons set out by the trial court in its conclusions of law, it erroneously placed that burden upon the wrong party.

■ The second issue involved in this appeal is whether or not the trial court prejudicially erred in refusing the appellant the assistance of its peremptory writ of mandamus. In this connection, we are not to review the trial court's discretion where it has been lawfully exercised, and in the absence of any abuse of that discretion the fact that we may have reached a different conclusion does not constitute prejudicial error requiring reversal, Sampson Distributing Co. v. Cherry, 346 Mo. 885, 143 S.W. 2d 307.

■ As has been previously indicated, even though the statute confers on the stockholder the right of inspection in absolute terms, it is nevertheless proper to deny a writ of mandamus in aid of that right when it appears that the right is sought for some evil, improper or unlawful purpose. State ex rel. Watkins v. Cassell, 294 S.W.2d 647, at page 652, supra. Now it is true that the appellant, by stating in his responsive pleading to the return that he made no reply to certain paragraphs of the return, must be held to have admitted the allegations of the return contained in those paragraphs, §§ 529.010, 529.030 RS Mo 1949, V.A.M.S.; State ex rel. Priest et al. v. Gunn et al., Mo., Banc, 326 S.W.2d 314, at page 328; and see State ex rel. Dunphy v. Eversole, Mo.App., 339 S.W.2d 506, where this court applied the same rule in a prohibition proceeding; and see State ex rel. Harvey v. Gilbert, 163 Mo.App. 679, at page 683, 147 S.W. 505. Among the allegations of the return thus admitted are that the publication of the results of its operation and of its financial statements have a marked effect on the market value of its outstanding shares of stock; that the dissemination of the information contained in

these documents to the appellant will compel the same result to other applicants among the shareholders " * * * including (with reasonable certainty in view of the number of shareholders of the Company) stockholders whose purpose will be to obtain 'insider' information and to trade on the same to the detriment of other shareholders of the Company"; that the dissemination of " * * * the information contained in such memoranda might be deemed by the Securities and Exchange Commission to constitute a violation of said Act, and might lead to an order suspending the effectiveness of the existing Registration Statement and prohibiting further sale of stock thereunder"; and that said request is so vague and indefinite, in view of the great variety of such records and the varied location thereof that respondents would be physically unable to comply with an order to produce the same if such an order were entered by the court.

The first two admissions are speculative in the light of the appellant's admittedly proper behavior with respect to this information. The dire consequences which the respondents envision could only come about in the event the appellant acted in a manner which the respondents admit that he will not. Neither should the appellant, in view of respondents' admission, be denied the court's assistance by its writ of mandamus because others, who may or may not later seek the same right, might act improperly. The respondents' own testimony shows that of over 7,100 stockholders, only two others have ever made such a request as has appellant. In the event the appellant later abuses the right of inspection granted herein, or any other stockholder seeking the right can be shown to have improper motives, such abuse can be speedily frustrated. State ex rel. Holmes v. Doe Run Lead Co., 178 S.W. 298, at page 301, supra. With respect to the allegation as to the possible violation of a federal Act, see a similar allegation in State ex rel. McClure v. Malleable Iron Range Co., 177 Wis. 582, 187 N.W. 646, 22 A.L.R. 5. That case is

also similar as to the contention made by respondents as to these reports being in the nature of unverified work sheets. Insofar as the last admission made by the appellant's failure to specifically deny certain allegations of the return is concerned, we think that admission must be given effect. In view of what we have said herein, the appellant had a right to see these books and records but there was no evidence that the allegations of the return were not true. The matter was not placed in issue by any evidence offered on behalf of the appellant. Compare Kelley v. National Lead Co., 240 Mo.App. 47, 210 S.W.2d 728, at page 731. Accordingly, in view of appellant's admission, it certainly cannot be an abuse of discretion for the trial court to refuse to enter such an admittedly futile order.

The trial court's decision rendered unnecessary any consideration by it of whether the appellant should be allowed to make copies with the " * * * expert assistance of accountants, stenographers and attorneys of his choice * * *" as prayed and as commanded in the alternative writ. Since we have herein held that the appellant has the right of inspection of these three documents under the provisions of § 351.215, supra, and that the trial court prejudicially erred in denying its peremptory writ of mandamus in aid of the enforcement of such a right, it is incumbent upon us to rule the point. We will do so, but not upon the question of the right of the appellant to have such assistance. Our decision on this point is compelled by the facts in this case. It is apparent from the record that copies of these documents are not what the appellant seeks. He seeks to continue his custom, formed while an employee of the company and continued during his retirement so long as these papers were available to him, to make notes from them. In that manner, he received the information he sought in a form satisfactory to him. Under his own testimony, therefore, there is no reason that the court should grant him the assistance of a stenographer. The same is true as to an account-

ant. Since the appellant testified that he understood the records which he seeks to inspect, the reason for the assistance of an accountant is no longer present. State ex rel. Johnson v. St. Louis Transit Co., 124 Mo.App. 111, 100 S.W. 1126. We think the same is true of the appellant's request to have attorneys assist him. He has not shown any reason why the court should exercise its discretion to grant him attorneys. At the risk of repetition we again state that the right to have the assistance of stenographers, accountants, and attorneys does not arise in and of itself from the existence of the right of inspection, and as to such assistance, we think the burden is upon the appellant who seeks it to show the trial court why it should exercise its discretion in the writ of mandamus appellant seeks by thus extending his own right of inspection to others. Under the facts in this case, the appellant is not entitled to the assistance of stenographers, accountants or attorneys.

■ As to the minutes, that point was conceded by the respondents, and properly so. However, again the trial court should not enter a futile order, and such would be the result of the inclusion of minutes in the peremptory writ, for it is undenied that appellant has in fact seen the very minutes which he requested to see. Should he request to see other minutes and those be denied him, this can be dealt with as it may arise.

We therefore hold that the trial court erred prejudicially in refusing its absolute writ of mandamus to aid the appellant in the enforcement of his statutory right of inspection of these three documents which are a part of the books of the corporation, as that term is used within the meaning of § 351.215, subd. 1, supra.

Our decision herein makes it unnecessary to rule upon the appellant's contention that the witness Jackson should not have been permitted to testify as to certain matters.

■ The only point remaining for our action is the contention of the appellant that the trial court erred prejudicially in not awarding him $750 as provided by § 351.215, subd. 2, supra, upon the showing of three separate refusals by Stuart to allow the appellant to see these records. In State ex rel. Watkins v. Cassell, 294 S.W. 2d 647, supra, we held that this subsection of the statute imposed a penalty for the violation of a private right, and affirmed a judgment under § 351.215, subd. 2, supra. There is no question but what the evidence in this case clearly shows the facts to be as appellant contends and the trial court found with respect to these demands and refusals. It follows that the trial court erred prejudicially in not awarding the appellant the sum of $750.

The judgment and order of the trial court quashing the alternative writ of mandamus is reversed, and this case remanded to the trial court with directions to enter its peremptory writ of mandamus requiring the company and Stuart to produce and exhibit these three documents to the appellant for his examination and further to permit the appellant to make notes thereof, and further require the respondent Stuart to forfeit the sum of $750 to the appellant.

The commissioner so recommends.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment and order of the trial court quashing the alternative writ of mandamus is, accordingly, reversed and the cause remanded with directions to the circuit court to enter its peremptory writ of mandamus and further require the respondent Stuart to forfeit the sum of $750 to the appellant.

ANDERSON, P. J., and O. P. OWEN, Special Judge, concur.

WOLFE and RUDDY, JJ., not sitting.