STATE of Missouri ex rel. John AIMON-
ETTE, and John Aimonette (in his own
behalf), Plaintiffs-Respondents,

v.

C. & R. HEATING AND SERVICE COMPA-
NY, Inc., et al., Defendants,

C. & R. Heating and Service Company, Inc.,
a corporation, et al., Defend-
ants-Appellants.

No. 33954.

St. Louis Court of Appeals,
Missouri.

Nov. 23, 1971.

Motion for Rehearing or to Transfer to
Supreme Court Denied Jan. 3, 1972.

Application to Transfer Denied Feb. 22, 1972.

Blumenfeld, Kalishman, Marx & Tureen, Jerome Kalishman, St. Louis, for defendants-appellants.

Thomas J. McGarry, Clayton, for plaintiffs-respondents.

WEIER, Commissioner.

This is a mandamus action to compel the production of corporate books for examination by a stockholder and to charge a penalty against the president of defendant corporations for refusal to submit them to examination under the provisions of Section 351.215(2), RSMo 1969, V.A.M.S. From a judgment of the circuit court ordering submission of certain minutes and assessing a forfeiture of $750.00 against the corporate president, defendants have appealed.

Defendants C. & R. Heating and Service Company, Inc. and West County Piping Company were, at all times pertinent to this controversy, Missouri corporations, with their identical office and principal place of business in St. Louis County, Missouri. Defendant Clarence Sickmann was president of both companies. C. & R. was engaged generally in the business of selling and installing heating, ventilating and air-conditioning equipment. West County installed steam lines, water lines, air lines and related work having to do with pipes. Plaintiff John Aimonette owned 57 shares of common stock of C. & R., which amounted to about 16 per cent of the total stock issued by that company. He also owned 50 per cent of the common stock of West County. Mr. Aimonette at the times that demands were made for inspection of the records of the company lived in Florida. Until July of 1969 he had been manager and salesman for C. & R. He was also a director of that company prior to moving from this state. Mr. Aimonette had also been president of West County and active in its management. He was a party to "buy and sell" stock agreements under which he could be compelled to give the other stockholders the option to purchase his stock at book value if he desired to dispose of his stock. He was a party to an option agreement whereby he might purchase a controlling interest in C. & R. at $100.00 per share if any of the stock of Mr. Clarence Sickmann were sold or transferred.

On July 11, 1969, Mr. Sickmann as president of C. & R. transmitted by letter to Mr. Aimonette a copy of the financial statements of that company. In the letter Sickmann advised Aimonette that the board of directors had not accepted or approved these statements that had been prepared by an accountant, Sylvester W. Wieck. Mr. Wieck was not only the accountant but also secretary and a director of the company.

Just prior to this, on July 9, 1969, Aimonette's attorney had orally requested of the attorney representing C. & R. and West County and Sickmann an inspection of the minute books and stock books of the companies. This request was confirmed by letter. Defendants' attorney thereupon instructed plaintiff's attorney to address a written request to Sickmann. This request was in letter form dated July 17, 1969, and posted by certified mail to Sickmann. It demanded an inspection by Aimonette's attorney. Thereafter, the books and records requested were produced at the office of defendants' attorney and were inspected by both Aimonette and his counsel on July 25, 1969. Plaintiff's attorney desired copies of certain minutes of C. & R. meetings. His request was acceded to by defendants' counsel, but the copies were not forwarded; and after telephone calls and finally another certified letter dated August 8, 1969, demanding another inspection of the books and records, arrangements were made by defendants for plaintiff's counsel to come to the office of defendants' attorney to inspect the books and records. At

this time he was alone without plaintiff. He was given copies of the minutes previously requested except those pertaining to a special meeting of the board of directors of C. & R. on June 15, 1961. The attorney for plaintiff testified later in this case that he took notes at the time of the first inspection on July 25, 1969, and that, both according to his notes made at the time of inspection and his personal recollection, he had found and read minutes of a special meeting of June 15, 1961. But he did not receive a copy of them as he had requested and they were not in the minute book when he inspected it again on August 14, 1969. According to his notes, plaintiff's counsel stated these minutes provided that Aimonette was employed as vice-president and general manager of C. & R. at a weekly salary of $220.00 and he was given an option to acquire stock. At the time of the August inspection, plaintiff's counsel found minutes of directors meetings for every month from and including December 1960, to and including May, 1962, with the exception of June, 1961.

On November 17, 1969, plaintiff's attorney made demand to inspect the books and records of C. & R. and West County. This time he was refused. In reply to his demand, defendants' attorney wrote on November 19, 1969, that since Mr. Aimonette would not be present during the inspection, the request would be refused because only a shareholder had the right of inspection.

The trial court by its judgment found that defendant Sickmann, while an officer of C. & R. and West County and having charge of the books of the two companies, refused to exhibit them in accordance with the demand of November 17, 1969; and further refused and neglected to exhibit the minutes of the board of directors dated June 15, 1961, in response to the demand of August 8, 1969; that defendant Sickmann had still refused to exhibit these minutes of C. & R. to plaintiff. C. & R. and its officers were thereupon ordered "to exhibit and submit to plaintiff John Aimonette and/or his attorney" the minutes of

June 15, 1961, specifying the time and place, and, further, that Mr. Sickmann forfeit the sum of $750.00.

The principal issue raised on appeal is the propriety of the court's order compelling defendants to exhibit to plaintiff's counsel the corporate books and records. Before we consider this, however, there are preliminary matters for attention. First, plaintiff seeks by motion to have the appeal dismissed because the defendants' brief sets out abstract statements of law for its points relied on rather than briefly and concisely stating why and in what respect the court's ruling and judgment were erroneous. We concede that the brief of defendants fails to comply completely with Civil Rule 83.05(e), V.A.M.R., but it is generally our preference to dispose of a case on the merits, where possible, rather than dismiss because of deficiencies in the brief. Civil Rule 83.09, V.A.M.R.; Public Water Supply District No. 2 of Jackson County v. Alex Bascom Co., Mo., 370 S. W.2d 281; Bensinger v. California Life Insurance Company, Mo.App., 459 S.W.2d 511, 513 [1].

The motion to dismiss is therefore denied.

Defendants complain of the failure of plaintiff to file a reply to their return. It is elementary procedure in a mandamus action for relator to file a reply responding to the material facts alleged in the return. Civil Rule 94.02, V.A.M.R. Defendants contend that by reason of this failure, plaintiff (relator) has admitted all affirmative averments in the return, as provided in Civil Rule 55.11, V.A.M.R. No motion was made or filed in reliance on the allegations made in defendants' return. Rather, the parties went to trial and the case was submitted to the trial court on matters alleged in the return. The issues were then framed by the evidence. The contention that plaintiff admitted these averments in the return of the defendants comes too late in their brief on appeal. They should have been raised by motion

prior to trial of the case or by objection to evidence at the trial, on the ground the evidence was not within the issues made by the pleadings. By Civil Rule 41.02, V.A.M.R., the Rules of Cvil Procedure govern the practice and procedure in all suits and all proceedings of a civil nature, legal, equitable and special, and are applicable in mandamus proceedings where not inconsistent or repugnant to them. State ex rel. R–1 School District of Putnam County v. Ewing, Mo.App., 404 S.W.2d 433, 439 [9]. Furthermore, Civil Rule 55.54, V.A.M.R., specifically provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. The defendants' contention is therefore without merit. The issues here determined by the court were within the evidence adduced by the parties, to which no objection was made. Miller v. Higgins, Mo., 452 S.W.2d 121, 124 [2]; Bryan v. Bryan, Mo.App., 452 S.W.2d 293, 297 [6, 7].

■ Claimed error in the mistaken reference to a statutory provision in the petition, towit: Section 351.250, RSMo 1969, V.A.M.S., instead of Section 351.215, RSMo 1969, V.A.M.S., is also without merit. The error was called to the court's attention during trial and again defendants raised no issue with respect thereto, until they filed their brief in this court.

■ Defendants further charge error in the action of the trial court granting relief to plaintiff because he was charged with "evil, improper or unlawful purposes" for which mandamus would not lie. We fail to find such an allegation in the return, which, even if alleged, would not be well-pleaded facts, since words such as "evil", "improper" or "unlawful", when unsupported by pleaded facts, are conclusions of the pleader, not statements of fact, and are to be disregarded even where no response has been filed to the return and a motion to dismiss seeks judgment on the pleadings.

State ex rel. State Tax Commission v. Briscoe, Mo., 451 S.W.2d 1, 3 [1], 5 [9].

■ It is further contended by defendants the trial court erred when it allowed plaintiff to introduce evidence of a stock option executed in 1961 for 90 shares of common stock of C. & R. They first say this was contrary to the best evidence rule, in that the written instrument would be the best evidence, and alternately, they maintain such a contract, if oral, would be barred by the statutes of fraud. (Section 400.2–201, RSMo 1969, V.A.M.S., and Section 432.010, RSMo 1969, V.A.M.S.) This testimony was elicited from Aimonette after he had been interrogated as to whether he needed an attorney to review the corporate books and records. His attorney testified that the minutes of June 15, 1961, which were not in the minute book of C. & R. at the time of the second inspection, contained a reference to the stock option. As we view it, the reference in Aimonette's testimony to a stock option in 1961 was for two purposes: One, to indicate a need for expert legal assistance in the inspection of the books; and, two, to corroborate his attorney's testimony that the missing minutes of June 15, 1961, did contain a reference to a stock option. Certainly this litigation does not have for its purpose the determination that there was a stock option or the establishment of any legal obligations thereunder. The line of questioning as to the option had a direct bearing on the reason or necessity to inspect the books, using a lawyer at the time of inspection, to sift through the materials, both to advise plaintiff on his rights as a stockholder and to marshal evidence, if necessary, to establish these rights. Since the evidence objected to was offered on a collateral matter, the best evidence rule is not applicable. Aviation Enterprises, Inc. v. Cline, Mo.App., 395 S.W.2d 306, 308 [1–5]; State ex rel. State Highway Commission v. Galeener, Mo., 402 S.W.2d 336, 338 [3]. For the same reason, the statute of frauds forms no basis to support any objection.

We now consider the prime issue advanced by the parties. This is the propriety of the court's order determining that plaintiff's counsel, unaccompanied by plaintiff, had a right to inspect the corporate books and records. Section 351.215, RSMo 1969, V.A.M.S., provides in part:

"1. * * * Each shareholder may at all proper times have access to the books of the company, to examine the same, and under such regulations as may be prescribed by the bylaws.

"2. If any officer of a corporation having charge of the books of the corporation shall, upon the demand of a shareholder, refuse or neglect to exhibit and submit them to examination, he shall, for each offense, forfeit the sum of two hundred and fifty dollars."

The statute is silent on the question of whether or not an attorney representing a stockholder may have access to and inspect the records of a company without his client being present. By its terms the statute neither allows nor prohibits an attorney from so acting in the place of his client.

Our court has had occasion at different times to define the rights of a stockholder to have expert assistance in making an inspection. In one of the older cases it was determined expert aid may be needed to render the examination effectual. State ex rel. Spinney v. Sportsman's Park & Club Association, 29 Mo.App. 326, 331. Thus, where a stockholder was conceded the privilege of making extracts and memoranda from the books and records, but was denied the use of a stenographer, this was characterized as giving him a right and denying him the most convenient mode of using it. The right to use an expert accountant by the average stockholder would be undeniable because most stockholders are incapable of understanding the books and records of an extensive business without taking an unreasonable time to study them. State ex rel. Johnson v. St. Louis Transit Co., 124 Mo.App. 111, 100 S.W.

1126, 1128; State ex rel. Haeussler v. German Mut. Life Ins. Co. of St. Louis, 169 Mo.App. 354, 152 S.W. 618, 619 [3]. But if the stockholder understands the books and records which he seeks, then there is no need for expert assistance. Furthermore, the burden is on the stockholder to show the necessity for expert assistance. State ex rel. Jones v. Ralston Purina Company, Mo.App., 343 S.W.2d 631, 642 [13, 14], transferred, but decided differently on another issue, State ex rel. Jones v. Ralston Purina Company, Mo., 358 S.W.2d 772. No Missouri case law called to our attention or found by us treats of the particular issue in this case.

Re-examining the facts, it is apparent that Aimonette, the stockholder, was only present at the initial inspection on July 25, 1969, at the office of defendants' attorney. His attorney was with him and there was no protest over the attorney's presence. The next inspection, on August 14, 1969, when it was discovered that the minutes of June 15, 1961, were missing, was made by plaintiff's attorney alone. No question as to the attorney's right or privilege to examine the records was raised. It was at this time copies of other minutes were turned over to him and he determined the C. & R. minutes of June 15, 1961, were missing. It was only when demand was again made on November 17, 1969, for a further inspection of the records specifically including the missing minutes of June 15, 1961, that defendant Sickmann then raised a question as to the right of plaintiff's attorney to inspect them. By that time it seemed obvious that the assistance of an attorney by the plaintiff stockholder was needed, not only at the time of the prior inspections but for the examination requested for November 20, 1969. Aimonette lived in Florida. His attendance at both the second and third inspection would have been merely perfunctory and the journey from his residence in Florida would have been time-consuming and expensive. No improper, ulterior or illegal motive was shown on the

part of plaintiff's attorney. Three inspections, with the first in July and the third in November, do not seem to be harassment. Since no objection was made to the presence of the attorney at the time of his first appearance, and none made when he appeared alone the second time, absent other factors, defendants waived any right to object, when the attorney made demand on behalf of his client the third time. State ex rel. Johnson v. St. Louis Transit Co., supra, 124 Mo.App. 111, 100 S.W. 1126, 1128. Thus, there were three refusals on the part of defendant Sickmann to make books and records available for inspection: 1) when the C. & R. minutes of June 15, 1961, were not made available on August 14, 1969; 2) when inspection of the C. & R. books and records was refused on November 19, 1969; and 3) when inspection of West County books and records was refused on November 19, 1969. We, therefore, affirm the court's judgment of forfeiture of $750.00 against defendant Sickmann.

As to that portion of the court's judgment authorizing plaintiff's attorney co-equal rights to inspect the minutes of June 15, 1961, of C. & R. Heating and Service Company, Inc. after the trial, we again affirm. No reason appears to this court why plaintiff should be personally present at the time of this inspection. No question was raised as to the sufficiency of the evidence to support the ruling of the trial court. The propriety of the examination by the attorney and his authority to act for his client were not raised. It was admitted by defendants' certified public accountant, it would be necessary to go to the books of original entry to evaluate the balance and profit and loss statements. Aimonette was neither a lawyer nor an accountant. Inability to leave his employment and to travel a great distance, and want of training and skill might prevent effective inspection. Plaintiff had already carried the burden of proving he needed expert assistance. His presence would contribute nothing. The added requirement that he be personally present would be unwarranted unless it was shown that his presence was reasonably necessary. The mere fact that the statute is silent as to the right of a stockholder to have an inspection made by his attorney solely, without the presence of the stockholder, does not prohibit this from being done. State ex rel. Mandelker v. Mandelker, 197 Wis. 518, 222 N.W. 786. Under the circumstances of this case, the court below was within the bounds of a sound discretion when it so ordered.

The judgment is affirmed. The case is remanded so that the circuit court may again set a date for the inspection and examination of the books and records of C. & R. Heating and Service Company, Inc. and West County Piping Company.

PER CURIAM:

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, plaintiff's motion to dismiss defendants' appeal is denied. The judgment is affirmed. The case is remanded so that the circuit court may again set a date for the inspection and examination of the books and records of C. & R. Heating and Service Company, Inc. and West County Piping Company.

BRADY, P. J., DOWD, J., and LACKLAND H. BLOOM, Special Judge, concur.