STATE of Missouri ex rel. John S. JONES (Relator), Appellant,

v.

RALSTON PURINA COMPANY, a Missouri corporation, and Lewis B. Stuart, Respondents.

No. 48831.

Supreme Court of Missouri,

En Banc.

June 18, 1962.

Rehearing Denied July 16, 1962.

Brackman, Oetting & Brackman, William J. Oetting, Paul Brackman, Clayton, for appellant.

R. H. McRoberts, Marion S. Francis, St. Louis, for respondents, Bryan, Cave, Mc-Pheeters & McRoberts, St. Louis, of counsel.

LEEDY, Judge.

Mandamus by a stockholder to compel corporation to permit inspection and copying of specifically designated corporate "reports and records," and to enforce statutory forfeiture against the individual respondent for having thrice refused the stockholder's demand to so inspect. The trial court found for respondents and entered judgment quashing the alternative writ. The stockholder appealed to the St. Louis Court of 'Appeals, and in an opinion reported at 343 S.W.2d 631, that court reversed the judgment, and remanded the cause with directions to award a peremptory writ, and to require the individual respondent to forfeit $750 to relator. On respondents' application to this court, it was ordered that the case be transferred here, so it is now before us for final determination as on original appeal.

Since the determinative question is simply whether the three documents relator seeks to inspect are within the purview of the statute he invokes (§ 351.215, RSMo and V.A.M.S.) a somewhat brief statement of the facts will suffice. A more detailed statement will be found in the opinion of the Court of Appeals, to which the reader is referred.

Relator Jones is a retired employe of the respondent corporation, and owns a substantial number of shares of its capital stock. In the course of his duties as manager of the sales analysis department for the chow division (from 1942 to 1956) he had occasion to see and inspect the documents he now seeks to continue to examine in his retirement. He made appropriate requests to inspect, and these were denied, and, in consequence, he instituted this action. The corporation is a large one, and concededly its operations have been "phenomenally successful." Its general (registered) office is in the City of St. Louis. There are about 7100 stockholders, and 80% of its stock is held by employes and their families. It operates directly or through subsidiaries in forty-eight states, Canada, Mexico, Cuba, Colombia and Venezuela. It appears from the annual report for 1958 (the year preceding the one in which this action was filed) that it had 54 chow plants, 4 cereal plants, 9 U.S. soybean processing plants, 2 Mexican oilseed processing plants, 1 sanitation products plant, and 6 research farms. The balance sheet forming part of that report shows net earnings for the year were $17,-468,759; total footings were $193,285,085, with total shareholders' equity shown as $132,185,206.

The specific documents sought to be inspected are known as "The Preliminary,"

**774**

"The Profit Analysis," and "The Balance Sheet." The documents are severally shown by the evidence to have been of the following character:

"The Preliminary" is a preliminary profit and loss statement which is a summary of the activities of the various departments and divisions of the corporation. It is a breakdown of the profit and loss of the different plants and products, including cumulative figures, so that at the end of the month it shows current profit and loss figures as well as for the yearly period to date. It contains information derived from other accounting records and contains information not reflected in the "books of account," such as tonnages, and an estimate of annual earnings both before and after taxes not only for the parent corporation, but for its subsidiaries, and a consolidation of all such figures. The instrument gives separately preliminary profit and loss figures for each of the chow plants, each grocery product, each soybean operation, for the sanitation farm supply division, for dog chow as a separate product, for the retail feed stores, the breakdown of the operation of the grain company division by cities, and the elevator company on the west coast. It is prepared by the accounting department from (a) work sheets which in turn are prepared from trial balances sent in monthly to the head (St. Louis) office from the separate branches and plants, and consolidating the figures contained on such separate trial balances; and (b) from other records which are not reflected in the "books of account." The estimated earnings figures do not reflect anything that is recorded in the books of account, but are obtained from estimates which the management makes about future operations of the business.

"The Profit Analysis" is a monthly report of approximately 70 pages in mimeographed or other duplicated form showing the milling costs, tonnage and production of the various divisions, plant by plant, and product by product, together with the breakdown of all items of costs and expenses, and indicates whether or not there has been a profit or loss for any given month for the various products. Some of the information contained therein is obtained from trial balances sent in by various plants and divisions, subject to adjustments as required at the head office, and other information is obtained from sources not reflected in the books of account or in the general ledger, but from sales and production department records.

"The Balance Sheet" is not prepared in the same form as the regular company balance sheet, but is more detailed and gives items not included in the latter. It is a monthly statement, partially typed and partially handwritten, which is a tentative or preliminary balance sheet. It is a long columnar sheet with current entries being added in ink each month which reflects preliminary profit figures obtained by the use of the other two documents above described. It gives a preliminary breakdown of the various items in the consolidated balance sheet on a monthly basis, showing a comparison with similar information for preceding years. The information contained in this document is taken from the trial balances sent in from time to time by the different plants and divisions of the company. Basically, the document is a compilation of items that appear on "The Preliminary" and on "The Profit Analysis" reduced to balance sheet form. The figures in each of these documents are unaudited, are subject to check, verification, adjustment and analysis, and are frequently changed from month to month because of errors discovered or for other reasons. These documents are prepared regularly, and a copy goes to each elected officer and director (eighteen persons in all) and no one else. The company considers the information contained in the documents so confidential and feels that the disclosure of it is potentially of such danger to the company that even the top officials and directors do not retain their copies, but after being reviewed by them

all copies are collected by and retained in the comptroller's office.

The books kept in the company's principal office in St. Louis include the following: A private ledger, the general ledger, accounts receivable ledgers, stock ledgers, cash receipt books, and cash disbursement books; and, in addition, a series of private ledgers for each of the subsidiary companies and plants. (At each of such branch offices or plant locations there is also kept a general ledger, cash receipts and disbursement books, accounts receivable ledgers and voucher payable ledgers.) The private ledger maintained in the St. Louis office contains the principal property accounts and represents reserves, contains the surplus account, the controlling accounts for the capital stock records, the debenture records, providing for income taxes and certain types of special receivables in connection with the soybean or cereal part of the business. The general ledger contains the current additions or retirements to the property accounts; it contains the control accounts for the cash accounts which control the cash receipts and disbursement books; it contains certain inventory accounts, prepayment accounts (such as prepaid insurance and debenture expense); also control accounts for the regular receivables; various accrual accounts—wages, interest, etc.; it also contains the profit and loss accounts, that is the control accounts for certain sales and items of that nature, miscellaneous income such as from investments; the general ledger also contains a control account for each of the fifty-five or sixty branch or subsidiary operations. At each separate plant, such as a chow plant, a separate set of books is kept, and the books kept there reflect the operations of that particular plant, and they parallel the major or principal books that are kept in St. Louis. There is also maintained at the St. Louis office a prorate ledger to which are charged, from the cash disbursements recorded, administrative and selling expenses as the same are paid. This ledger is cleared monthly, and the amount charged to the respective plants so that selling and administrative expenses will be reflected in the ledgers of the respective plants. Such proration among the different plants is in accordance with certain formulas and principles.

The term "private ledger" is derived "from an old custom of years ago" under which the ledger in which major accounts were kept was normally locked and access to it was by a limited number of persons, but the term is no longer descriptive of the character of such a ledger.

The right sought to be enforced by this proceeding is the statutory right accorded stockholders under § 351.215, RSMo and V.A.M.S., to inspect certain classes of corporate records, which statute reads as follows: "1. Each corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its shareholders and board of directors; and shall keep at its registered office or principal place of business in this state books in which shall be recorded the number of shares subscribed, the names of the owners of the shares, the numbers owned by them respectively, the amount of shares paid, and by whom, the transfer of said shares with the date of transfer, the amount of its assets and liabilities, and the names and places of residence of its officers, which books shall be kept open for the inspection of all persons interested. Each shareholder may at all proper times have access to the books of the company, to examine the same, and under such regulations as may be prescribed by the by-laws.

"2. If any officer of a corporation having charge of the books of the corporation shall, upon the demand of a shareholder, refuse or neglect to exhibit and submit them to examination, he shall, for each offense, forfeit the sum of two hundred and fifty dollars."

The petition for the alternative writ invoked and was based solely upon that stat-

ute, and the case having been heard and determined in the trial court on that theory, it will be reviewed here on the same theory. Nance v. Atchison T. & S. F. Ry. Co., 360 Mo. 980, 232 S.W.2d 547, 551. This effectively forecloses consideration of any question with reference to relator's common law right of inspection, there being no such issue in the case.

The trial court determined that the documents in question were neither "books" or "records of account" within the meaning of § 351.215, and hence the right of inspection conferred by that section did not extend to them. The Court of Appeals held to the contrary.

The appellant relies primarily on State ex rel. Watkins v. Cassel, 294 S.W.2d 647, decided by the St. Louis Court of Appeals, which does seem to hold (and that court's opinion in the case at bar says it does, and, in fact, is based in considerable part thereon) that a stockholder's right of inspection both at common law *and under the statute* "extends to all books, records, papers, contracts or other instruments which will enable the stockholder better to protect his interest and perform his duties as a stockholder," citing Ellsworth v. Dorwart, 95 Iowa 108, 63 N.W. 588; Otis-Hidden Co. v. Scheirich, 187 Ky. 423, 219 S.W. 191, 22 A.L.R. 19; State ex rel. McClure v. Malleable Iron Range Co., 177 Wis. 582, 187 N.W. 646, 22 A.L.R. 5; Weinhenmayer v. Bitner, 88 Md. 325, 42 A. 245, 45 L.R.A. 446.

This rule does not find universal application, and, indeed, we think it erroneous as applied to the scope of examination permitted under our own statute, § 351.215. An examination of the first two of the foregoing cases will disclose they do not support such holding. In both of them the statutory right of inspection was denied, but the court upheld the right under the common law rule.

Our statute is wholly unlike any of those under scrutiny in those cases. For example, the statute in Ellsworth v. Dorwart, supra, provided that the offices of certain officers were to be kept at the principal place of business of the corporation "in which offices the original record, stock, and transfer books, and all original papers and vouchers of such corporation shall be kept; and such [officers] shall keep a record of the financial condition of the corporation which may be inspected at all reasonable hours by any stockholder," etc. Among other things, the stockholder sought to examine "all books and vouchers pertaining to the financial affairs of the corporation." In upholding the denial of the right of inspection of original papers and vouchers thus demanded, the court said: "A strict construction of the statute perhaps does not give him the right to examine the original papers and vouchers, and, if such right exists at all, it is given by a liberal construction of the language used or by the common law." But in the concluding paragraph it is made clear that the court held the statute inapplicable, for it was there said: "As we have seen, the statute does not confer the right to examine the original papers and vouchers of the corporation, and we think that, to entitle plaintiff to it, he should plead and prove that some property right is involved, or that some controversy exists, or that some specific and valuable interest is in question, to settle which an inspection of these documents becomes necessary." In short, the stockholder was relegated to his common law right of inspection, the exercise of which is dependent on showing a satisfactory reason and proper purpose. That case is not authority in support of the proposition for which it was cited. The same is true of Otis-Hidden Co. v. Scheirich, supra. There the right of inspection upheld was not under the Kentucky statute, but under the common law rule, the court saying, "[T]he statute does not cover the right of inspection in a case like this, and we must look to the common-law rule on the subject." So its holding that the right of inspection there under scrutiny extended to and included "the documents, contracts and papers of

the corporation" had reference exclusively to the stockholder's common law right, and not that under the statute.

The other cases are more nearly in point, although each involved the construction of a particular statute, neither of which is like our own. In State ex rel. McClure v. Malleable Iron Range Co., 177 Wis. 582, 187 N.W. 646, 22 A.L.R. 5, the question was whether a certain schedule (called a statement of the segregated cost of defendant's real estate) and work sheets prepared by an expert accountant for the corporation were within the purview of the statute providing that "the books of every corporation containing the stock subscription and accounts shall at all reasonable times be open to inspection," etc. The material sought to be inspected was prepared for use in an accounting required of the company in litigation involving patent infringements. The figures on the schedule were compiled from the company's books and records and information furnished by the officers of the company, including the relator, but the values set forth therein were never adopted by the company nor placed or carried on the company's books. The trial court had found that such material "was not a record, account or book of the defendant corporation" within the meaning of the statute, but the Supreme Court, adhering to what it acknowledged to be Wisconsin's "liberal view pertaining to the subject of inspection," held that under the statute the stockholder had an unconditional and unqualified right of inspection regardless of the motives inducing him to desire it. In the course of the opinion the court used this language: "The right of a stockholder to examine the records and books of account of a corporation extends to all papers, contracts, minute books, or other instruments from which he can derive any information which will enable him to better protect his interests and perform his duties."

In Weinhenmayer v. Bitner, 88 Md. 325, 42 A. 245, 45 L.R.A. 446, the statute required the president and directors of every corporation to "keep full, fair and correct accounts of their transactions, which shall be open at all times to the inspection of the stockholders or members." The stockholder asked for "all books, papers, and accounts of every kind and description whatsoever of the corporation," and the court held that the right of examination given by the provisions just quoted includes all books, papers, and accounts containing the transactions of the corporation.

■ We agree with the Court of Appeals, as stated at 343 S.W.2d 638 [3, 4], that the basic rule of statutory construction here applicable is that the court "are to seek the intention of the lawmakers and to do so from the words used, if possible; ascribing to the language used its plain and rational meaning and giving significance and effect to every word, phrase, sentence and part thereof, if in keeping with that intent." Nor do we disagree with its conclusion (stated in the same paragraph) with respect to the purpose the legislature sought to accomplish by the enactment of the present section. We think, however, that respondents' interpretation of the statute in that regard (as summarized in their supplemental brief filed here) is perhaps more accurate and comprehensive, and we adopt it, as follows:

"Each corporation is required to keep, wherever it may choose, correct and complete books and records of account and minutes of the proceedings of its shareholders and board of directors.

"Each corporation is required to keep at its registered office or principal place of business in this state certain specific books, i. e., a stock book (including a book recording transfers of shares of stock), a book in which the amount of its assets and liabilities shall be recorded, and a book in which the names and places of residence of its officers shall be recorded; which specific books shall be kept open for the inspection of all persons interested.

■ "Each shareholder may at all proper times and under such regulations as may

be prescribed by the by-laws have access to and may examine all of the books of the company, not only those which are required to be kept in this state, but those which are required to be kept wherever the corporation may choose to keep them.

"Finally, the officer of the corporation having charge of the books of the corporation who shall refuse to submit the same to examination shall for each offense forfeit the sum of two hundred fifty dollars."

The question is reduced (as forecast earlier) to whether the paper writings sought to be inspected are "books" within the meaning of the statute. Under the evidence, the trial court was warranted in regarding them as being analyses or tentative studies prepared purely for the information of the management, and, being in the nature of confidential inter-office communications, were not comprehended within the meaning of "books" as that term is used in the statute. Wherefore, its judgment is affirmed.

All concur.