**STATE of Missouri, ex rel. Earle J. KENNEDY, Jr., Relators/Respondents,**

v.

**CONTINENTAL BOILER WORKS, INC. and Robert G. Fournie, Sr., Respondents/Appellants.**

No. 58612.

Missouri Court of Appeals, Eastern District, Division Three.

April 9, 1991.

Andrew Rain Kasnetz, Clayton, for respondents/appellants.

Gregory Howard Wolk, St. Louis, for relators/respondents.

REINHARD, Presiding Judge.

Defendants Robert G. Fournie, Sr. and Continental Boiler Works, Inc., appeal from the trial court's peremptory Writ of Mandamus compelling them to allow the inspection by plaintiff[1] of the records of Continental Boiler Works. We affirm.

Continental Boiler Works and its subsidiaries are owned by members of two families. Plaintiff's family owns 50% of the outstanding common stock, which are voting shares, and 64.46% of the preferred stock which is non-voting. Plaintiff acts as the agent for the members of his family. He is also a member of the Board of Directors, and was president of the company until 1984.

The Fournie family owns 50% of the common (voting) stock and 35.54% of the preferred stock. Robert Fournie, Sr., president of Continental, is also the authorized agent for the Fournie family members who own stock in the corporation.

In 1984 friction between the two families caused them to execute an agreement that split control of the company and its subsidiaries. The Fournie family would operate Continental Boiler Works, Brooks Erection Company, and Wise Industries. The Kennedy family would operate the Boardman Company and Gulf States Fabricators. The agreement further provided for regular financial reports to be exchanged between the two families relative to their respective businesses. The agreement also included the following clause regarding binding arbitration:

## ARTICLE X

### Binding Arbitration

In the event a dispute arises between the Kennedy family and the Fournie family concerning any aspect of this agreement, either family shall have the right to have

---

1. To avoid confusion, we will refer to the relators/respondents as plaintiff and the respondents/appellants as defendants.

the issue arbitrated by giving thirty (30) days written notice to the other.... The decision of the arbitrator shall be final; the parties hereby agree to be unqualifiedly bound by his or her decision.

In 1985, Fournie, Kennedy, and Continental were sued by a former employee over the interpretation of a stock restriction agreement. *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896 (Mo. banc 1990) (*Peterson I*) and *Peterson v. Continental Boiler Works* Cause No. 882–02233 (*Peterson II*). Although these cases were settled on August 22, 1990, Peterson II was pending at the time the case at bar was tried. The record indicates that some of the documents sought here were requested by Kennedy during the pendency of the Peterson litigation and that conflicts arose over their production.[2]

During this time period, beginning in 1984, Continental was in financial difficulties which culminated in foreclosure by its lender in 1987. Continental is no longer functioning, but the record indicates that liquidation activities continue.

Plaintiff filed his Petition for Writ of Mandamus for Inspection of Corporate Books and Records on October 18, 1989. Paragraph 4. of this document stated:

4. Relator has heretofore demanded, in writing, that Respondent make available certain books and records for his inspection in accordance with Section 351.215, R.S.Mo., and in accordance with Relator's rights as director of Continental, but Respondents have refused to do so and continue to his [sic] day to so refuse. Copy of Relator's most recent demand, dated June 12, 1989, is attached hereto as Exhibit "A" and incorporated herein by reference.

While plaintiff's original demand included 14 separate items, his Petition limited his demand to those documents described in paragraphs 4, 8, 9, 10, 11 and 14:

4. Receipts and Disbursements Journals of Continental Boiler Works, Inc. for the period from August 1, 1984 to present.

\* \* \* \* \* \*

8. Records of accounts receivable of Continental Boiler Works, Inc. for the period from January 1, 1985 to present.

9. Records of accounts payable of Continental Boiler Works, Inc. during the period from January 1, 1987 to December 31, 1987.

10. Contracts or subcontracts between Continental Boiler Works, Inc. and any other person or entity relative to completion of Continental's customer orders and/or manufacturing work in process during 1987 and any correspondence or other documents reflecting solicitation of such contracts or subcontracts and/or receipt of payments by Continental thereunder.

11. Any and all documents, including bills of sale, equipment inventory lists, title applications or other writings reflecting or referring to property, equipment or vehicles ever owned by Brooks International Corporation or Brooks Erection and Construction Co. which was since January 1, 1985 acquired or used by Continental Boiler Works, Inc., and/or documents reflecting consideration paid by Continental for same.

\* \* \* \* \* \*

14. Documents reflecting property and equipment acquired at foreclosure sale(s) of Continental Boiler Works, Inc. real and personal property in 1987, by whom acquired and the price received therefor.

Defendants alleged in their answer and at trial that plaintiff sought the document inspection for "some evil, improper or unlawful purpose and ... to harass, annoy and oppress Fournie" because "most if not all of the documents sought have been voluntarily made available ... in August, 1987." Defendants also asserted that since plaintiff had other avenues available which would allow him access to the documents, mandamus was not the appropriate reme-

---

2. Kennedy, at one point, filed a motion for sanctions that was rendered moot by the settlement.

dy. The trial court rejected these arguments and ordered that plaintiff be permitted to inspect and copy the documents as requested. This appeal followed.

Defendants' sole point on appeal is the following:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ENTERING ITS JUDGMENT OF PREEMPTORY [sic] WRIT OF MANDAMUS IN THAT MANDAMUS IS NOT AN APPROPRIATE REMEDIAL VEHICLE TO RESOLVE THE DISPUTE AT BAR WHERE, AS HERE, THERE ARE OTHER ADEQUATE REMEDIES AVAILABLE TO RESPONDENT, EARLE J. KENNEDY, JR. SPECIFICALLY, RESPONDENT HAS AVAILABLE TO HIM THE ADEQUATE REMEDY OF BINDING ARBITRATION[3] UNDER THE PROVISIONS SET FORTH IN THE JUNE, 1985 SHAREHOLDERS' AGREEMENT IN THAT THE DOCUMENT INSPECTION SOUGHT HEREIN IS COVERED BY THE REPORTING AND DISCLOSURE PROVISIONS CONTAINED IN THE AGREEMENT. FURTHER, RESPONDENT HAS ALWAYS HAD THE REMEDY AVAILABLE TO HIM OF DISCOVERY IN PENDING LITIGATION.

Defendants' point focuses exclusively upon whether the remedy selected by plaintiff and imposed by the trial court was appropriate. Because a determination of remedies must necessarily depend upon the rights and duties sought to be enforced, we begin our analysis with a discussion of plaintiff's inspection rights as a shareholder. Plaintiff sought the Writ of Mandamus pursuant to § 351.215, RSMo 1986, which states: "Each shareholder may at all proper times have access to the books of the company, to examine the same, and under such regulations as may be prescribed by the bylaws."

■ This statute codified the same common law right. As noted in *State ex rel.*

*Watkins v. Cassell,* 294 S.W.2d 647, 652 (Mo.App.1956):

The right of a stockholder to inspect the books and records of the corporation ... is based upon his interest in the assets and business of the company. He is entitled to such inspection even though his only object is to ascertain whether the affairs of the company have been properly conducted by the directors and managers. He has a right to know how the affairs of the company are conducted, and whether the capital of which he has contributed a share is being prudently and profitably employed. Such a right is necessary for the stockholder's protection.

Absent proof of an "evil or unlawful nature" *Id.* at 653, plaintiff, as a stockholder, clearly has the right to inspect so as to protect his own investment in the corporation. Defendants presented no evidence to support their assertions that plaintiff had such a motive.

■ Plaintiff is also a director of the corporation whose books he seeks to investigate. As such, his right to examine the books and records is "unqualified." *Id.* at 654. The necessity for this extensive access is clear:

Directors of a corporation are just what the title implies. They are the directors and managers of the corporation.... Theirs is a fiduciary relationship. Charged with these responsibilities, they must perform them based upon informed judgment. It becomes therefore axiomatic that a director have access to information contained in the corporate books and records. *State ex rel. Moore v. State Bank of Hallsville,* 561 S.W.2d 722, 724–25 (Mo.App.1978).

It is obvious, therefore, that plaintiff in his dual capacities of director and shareholder has the right to inspect the records of the subject corporation.

■ We turn next to the question of whether the remedy chosen by the trial court was the appropriate one to enforce

**3.** There is no contention that defendants have attempted to assert their alleged right to arbitration on this issue.

this right. Defendants refer us to a case heard by our supreme court, *State ex rel. Kelly v. Mitchell*, 595 S.W.2d 261 (Mo. banc 1980), as support for their contention that a writ of mandamus will not lie where other remedies are available:

There is no remedy that a court can provide that is more drastic, no exercise of raw judicial power that is more awesome than that available through the extraordinary Writ of Mandamus. Recognizing the extreme nature of the order to act in accordance with a peremptory Writ of Mandamus, we believe that the remedial writ ought to be reserved for those cases in which no alternative measure will be effective. *State ex rel. Kelly* at 266.

While we agree with this description of the writ of mandamus and with the note of caution sounded in the cases cited by defendants, we note that a quite different theme is found in those cases that address the specific issue of enforcement of a shareholder's right to inspect the books and records of a corporate entity. Indeed, we have uncovered no case in which defendants' theory has prevailed and many cases in which the use of the writ of mandamus has been approved.

So much of the argument as is directed to the proposition, that *mandamus* is not a proper remedy in a case of this kind, might be answered by numerous decisions running back to the yearbooks ... *State ex rel. Wilson v. St. Louis–San Francisco Railway Co.*, 29 Mo.App. 301 (1888).

Defendants attempt to create an exception to the practice of issuing a writ of mandamus in this case by pointing to specific alternative remedies, discovery in a pending proceeding and binding arbitration, which they insist must be used instead. We find no support for this contention. The suggestion that discovery be used was specifically addressed in *State ex rel. Watkins v. Donnell Mfg. Co.*, 129 Mo.App. 206, 107 S.W. 1112 (1908):

He has a broad legal right as a stockholder in the defendants corporation to look into its books at proper times and

places and for a proper purpose notwithstanding the suit pending in the circuit court, and this right the members of this court are not likely to curtail or deny ... It is the law, too, that the power to grant the writ is not affected by the existence of possible equitable remedies; for, while such remedies are proper subjects of consideration in exercising a judicial discretion, they cannot be permitted to interfere with or defeat a free exercise of that wise discretion with which the law invests the court in such cases. *Id.* at 1113.

While we find no Missouri case addressing binding arbitration specifically, a similar issue was decided in *State ex rel. Watkins v. Cassell*, 294 S.W.2d 647 (Mo.App. 1956). In that case, the company offered the relator the right to inspect subject to several restrictions. The court, in approving the issuance of the writ, first noted that the company's offer did not allow the shareholder to make copies and thus was more restrictive than his legal right. The court then said:

Nor can the right of a stockholder or director to inspect the books and records be taken away by the substitution of some other method of informing him of the matters of which he desires to learn. *State ex rel. Watkins* at 655.

Our review of the cases has led us to the conclusion that the writ of mandamus has been the remedy of choice in those cases where a shareholder or director has been denied the right to inspect. Indeed, we have found only three instances where such a writ will be denied. The first is the most obvious one, where the shareholder does not own the shares. *State ex rel. Schultz v. Schultz*, 710 S.W.2d 507 (Mo. App.1986). The second occurred in *State ex rel. Jones v. Ralston Purina Company*, 358 S.W.2d 772 (Mo. banc 1962), where the documents sought were internal memoranda. The third reason for denial is discussed frequently as an exception to the right but rarely invoked. If the court determines that inspection is sought for an improper purpose then it may deny the writ. *See State ex rel. Moore v. State Bank of Hallsville*, 561 S.W.2d 722 (Mo.

App.1978). Clearly, the writ sought in the present case falls into none of these categories. In summary, our research has convinced us, contrary to defendants' assertions, that the use of the writ of mandamus to compel inspection is well settled law in Missouri. In addition, we firmly believe that the unique quality of this right fully justifies the use of an extraordinary remedy. We therefore decline to abridge such a right in the manner sought by defendants.

Judgment affirmed.

STEPHAN and CRANE, JJ., concur.