**STATE of Missouri, ex rel., David L. BROWN, Appellant–Respondent,**

v.

**III INVESTMENTS, INC, Respondent–Appellant.**

Nos. WD 59215, WD 59231.

Missouri Court of Appeals, Western District.

July 30, 2002.

856

Arthur A. Benson, II, Kansas City, MO, for appellant.

Michael W. Lerner, Overland Park, KS, for respondent.

Before LISA WHITE HARDWICK, Presiding Judge, JOSEPH M. ELLIS, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Judge.

Appellant David L. Brown and Respondent III Investments, Inc. ("Five I") both appeal the trial court's judgment in this action by Mr. Brown as a shareholder and Director of Five I seeking inspection of the corporate books and records.

Mr. Brown began working at Information Industries Incorporated ("Triple I"), a wholly owned subsidiary of Five I, in 1983. By 1997, he was vice-president of Triple I and had served as an elected officer of several of the eleven or twelve subsidiaries falling beneath Triple I in the corporate structure of Five I. Mr. Brown also served as a member of the board of directors for Five I from 1992 or 1993 through July 5, 1998.

Mr. Brown was terminated from his position as vice-president of Triple I in January 1998. At the time of his termination, he owned 27,540 shares of stock in Five I, representing 2.68% of the outstanding shares. When Appellant was terminated in January 1998, he and the president/director of Five I, Robert Spachman, discussed the purchase of Appellant's shares

in Five I, but they were unable to agree upon a price. Appellant offered to sell his shares for $137,000, but Spachman was only willing to pay $87,500.

On May 11, 1998, Appellant sent a written request to Five I asking to inspect a list of corporate documents. On July 5, 1998, Appellant was removed from Five I's board of directors. On July 7, 1998, Appellant received a letter from Five I denying his request to examine the requested documents.

Appellant again requested access to the corporate documents on August 4, 1998. In response to this second request, Five I provided Appellant with some of the requested documentation.

On November 13, 1998, Appellant sent another request to Five I asking to inspect the books and records of the company and specifically identifying twenty-two types of documentation that he was seeking.

In response, in December 1998, Five I provided Appellant with a consolidated financial statement for Five I prepared by an auditing firm and dated July 31, 1998.[1] However, Five I refused to allow Appellant to inspect the books and documents from which that financial statement was compiled and also denied Appellant access to many of the other documents he sought to examine.

After Five I refused to allow inspection of all of the requested documentation, Appellant filed a Petition and Application for Writ of Mandamus in the Circuit Court of Jackson County. On February 25, 1999, he filed an amended petition. In relevant part, Appellant sought to compel Five I to produce the documents in accordance with his statutory and common law right as a shareholder to inspect corporate documents.

On June 9, 2000, the trial court entered its "judgment" with regard to Appellant's statutory claims under § 351.215.[2] The trial court issued its writ of mandamus ordering Five I to produce for Appellant's examination Five I's federal income tax returns for 1997, 1998, and 1999 along with its State Corporate Annual Reports for 1995, 1996, 1997, 1998, and 1999. The trial court fined Five I $250.00 for having failed to comply with § 351.215 by not having provided Appellant with these documents and assessed costs against the company. The court denied Appellant's motion with regard to the other documentation sought.[3]

---

1. A similar document dated July 31, 1999, was provided to Appellant at trial.

2. All statutory references are to RSMo. 1994 unless otherwise noted.

3. In the June 9, 2000, judgment, the trial court made the following findings relevant to this appeal. With regard to whether Appellant had an improper or illegal purpose for seeking to examine the requested documents, the trial court made the following finding:

To leverage his demand, this court finds and believes by a preponderance of the evidence that "threats" of "messy" litigation have been made by plaintiff's attorneys, ... for the purpose of forcing an excessive buy-out of plaintiff's interests. Admittedly, plaintiff denies that motivating purpose, instead asserting that his 351.215 purpose is to acquire sufficient information with which to evaluate and protect his minority interest in IIIII. However, after weighing the credible evidence, this Court is not convinced by 'strong and convincing evidence' that the purpose of plaintiff's request is improper or unlawful.

The trial court held that as a shareholder Appellant had a qualified right under § 351.215 to inspect the corporate books and records. However, the trial court held that Appellant was not entitled to review the books or records of any of the subsidiary companies because Appellant was not a shareholder or director of those companies even though it found that Five I was "an investment company, not an operating company, with financial and ownership interests in various other corporations and entities."

Subsequent to the trial court's June 9, 2000 ruling relating to the application of § 351.215, the parties agreed to brief and submit the issue of Appellant's common law claim relying on the evidence already produced in the previous hearings. On September 15, 2000, the trial court entered its judgment denying Appellant's claim under the common law right of inspection, holding that § 351.215 preempted any right of inspection under common law.

On appeal, Mr. Brown challenges the trial court's decision to deny him access to certain documents. Mr. Brown also claims that the trial court erred as a matter of law in finding that the common law right of a shareholder to inspect corporate documents had been superceded by § 351.215.

In its cross-appeal, Five I challenges the trial court's determination that it must produce for Appellant's examination Five I's federal income tax returns for 1997, 1998, and 1999 along with its State Corporate Annual Reports for 1995, 1996, 1997, 1998, and 1999 and its fine of Five I for

having failed to comply with § 351.215 and assessment of costs against the company.

We first address Appellant's claim that the trial court erred in dismissing his common law claim. Appellant argues that the trial court erred as a matter of law in finding that the common law right of inspection had been preempted by § 351.215. Based on that finding, the trial court denied Appellant's common law claim as a matter of law.

■ We review the trial court's conclusions of law *de novo*. *St. Louis County v. B.A.P., Inc.*, 25 S.W.3d 629, 631 (Mo.App. E.D.2000). Accordingly, we must determine whether, as a matter of law, § 351.215 preempted the common law right of inspection that existed at the time of its enactment in 1943.[4]

■ " 'Where the legislature intends to preempt a common law claim, it must do so clearly.' " *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 235 (Mo. banc 2001) (quoting *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 69 (Mo. banc 2000)).

The trial court found that Appellant's request for "Supporting transaction ledgers to which all original transactions are posted, the totals for which are integrated into the general ledger" and "Supporting schedules for all asset, liability and equity balances for the last 5 years" involved the same documentation provided to and reviewed by the company's auditor. The court stated that Appellant did not need these documents because the financial statements in the audit report adequately showed the financial condition of the company and that production of the documents would be arduous and duplicative of the efforts of the auditor. The trial court also found that Appellant's request for "Copies of all notes payable or other debt instruments indicating liabilities of the Company as of the most recent year end" did not need to be complied with because the audited financial statement was sufficient for Appellant to use to assess the value of the company.

With regard to Appellant's request for "Copies of federal and states' income tax re-

turns for the past 5 years with supporting schedules including any parent, subsidiary or other related business," the court noted the unanimity of expert opinion on the value of these documents in ascertaining the safety and management of shareholder equity. For this reason, the court ordered Five I to produce the tax records for Five I for the three years in which an audit was not performed, but denied Appellant's request for tax records related to the subsidiaries or the years covered by the audits. With regard to Appellant's request for "Copies of State Corporate Annual Reports for the past 5 years for the state of incorporation," the trial court ordered that these documents be produced because Five I was required to maintain such records under Missouri law.

4. While § 351.215 has had subsequent minor amendments, the statutory language has remained substantially the same through the present day.

"[U]nless a statute clearly abrogates the common law either expressly or by necessary implication, the common law rule remains valid." *In re Estate of Parker*, 25 S.W.3d 611, 614 (Mo.App. W.D.2000). "'[A] statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect unless the statutory remedy fully comprehends and envelopes the remedies provided by common law.'" *Dierkes v. Blue Cross & Blue Shield of Mo.*, 991 S.W.2d 662, 668 (Mo. banc 1999) (quoting *Detling v. Edelbrock*, 671 S.W.2d 265, 271–72 (Mo. banc 1984)) (emphasis omitted). "[W]e strictly construe a statute when existing common law rights are affected, and if a close questions exists, we weigh our decision in favor of retaining the common law." *In re Estate of Parker*, 25 S.W.3d at 614–15.

In this regard, nothing in § 351.215 expressly or implicitly abrogates the common law right of inspection.[5] The statutory language makes no mention of superceding or displacing the common law right of inspection. In fact, the statute does not mention the common law right at all. Furthermore, the statutory right created by § 351.215 differs from the common law both in its requirements and its scope.

■ In order to exercise the common law right to inspect, a shareholder must present evidence showing a satisfactory reason and proper purpose in seeking the documents. *State ex rel. Jones v. Ralston Purina Co.*, 358 S.W.2d 772, 776 (Mo. banc 1962). Upon making such a showing, the shareholder is entitled to inspect those documents and records held by the corporation that would aid the shareholder in his or her purpose. *See State ex rel. Jones v. Ralston Purina Co.*, 343 S.W.2d 631, 639–40 (Mo.App. E.D.1961).

■ Under the statutory right, once a shareholder establishes his or her status as a shareholder, the company bears the burden of establishing that the shareholder has an evil, improper, or illegal reason for seeking to examine the documents. "Absent proof of an 'evil or unlawful nature,' plaintiff, as a stockholder, clearly has the right to inspect so as to protect his own investment in the corporation." *State ex rel. Kennedy v. Continental Boiler Works, Inc.*, 807 S.W.2d 164, 166 (Mo.App. E.D.1991) (internal citations omitted). Otherwise, the shareholder is entitled to examine the "books" of the company regardless of his purpose. *Jones*, 358 S.W.2d at 778. This statutory right does not extend to documents aside from the "books" of the corporation, like confidential inter-office communications containing internal analysis or tentative studies prepared for the information of management. *Id.*

■ Thus, a shareholder may well be entitled to exercise the statutory right even if unable to meet the requirements to establish the common law right. Furthermore, depending upon the nature of the

5. Section 351.215.1, RSMo 2000, provides:
Each corporation shall keep correct and complete books and records of account, including the amount of its assets and liabilities, minutes of the proceedings of its shareholders and board of directors, and the names and business or residence addresses of its officers; and it shall keep at its registered office or principal place of business in this state ... books and records in which shall be recorded the number of shares subscribed, the names of the owners of the shares, the number owned by them respectively, the amount of shares paid, and by whom, and the transfer of such shares with the date of transfer. Each shareholder may at all proper times have access to the books of the company, to examine the same, and under such regulations as may be prescribed by the bylaws.

purpose, the shareholder might be entitled to view a wider assortment of documents under the common law than as provided for in § 351.215. Given the differences between the statutory and common law rights and the fact that the common law right is not expressly abrogated by the statute, the legislature cannot be deemed to have preempted the common law right of inspection by enacting § 351.215. *Overcast*, 11 S.W.3d at 69. Consequently, the common law rule remains viable.

The case law provides further support for this conclusion. In *State ex rel. Jones v. Ralston Purina Co.*, 358 S.W.2d 772, 775–76 (Mo. banc 1962), the Missouri Supreme Court stated:

> The petition for the alternative writ invoked and was based solely upon that statute, and the case having been heard and determined in the trial court on that theory, it will be reviewed here on the same theory. This effectively forecloses consideration of any question with reference to relator's common law right of inspection, there being no such issue in the case.

In so doing, the Court recognized the continued vitality of the common law right of inspection, but noted that no such claim had been asserted in the case. The current version of § 351.215 is substantially the same as the original version of the statute enacted in 1943 which was in effect at the time *Jones* was decided. Furthermore, while the *Jones* court differentiated several cases on the grounds that they allowed inspection under the common law right of inspection, the court did not call into question the continued validity of that common law right.

Similarly, in *State ex rel. Schultz v. Schultz*, 710 S.W.2d 507, 509 (Mo.App. E.D.1986), the Eastern District of this Court noted that the "purpose of the statute and common law rule is to provide stockholders with an opportunity to determine whether their corporation is being properly operated." In so doing, the Court acknowledged the continued validity of the common law rule.

Given the recognition in the cases of the differences between the common law right and the right reflected in § 351.215 and the continued viability of the common law right in the case law subsequent to the original enactment of the statute in 1943, we hold that a shareholder continues to be able to pursue the common law right of inspection as well as the right reflected in § 351.215. The trial court erred as a matter of law in ruling to the contrary.

Therefore, we must reverse the trial court's finding that the common law right of inspection has been preempted by § 351.215 and its judgment denying Appellant's common law claim as a result of that finding. On remand, the trial court will need to address the merits of Appellant's common law claim.

We next address Five I's claims in its cross-appeal that the trial court erred in ordering it to produce federal income tax returns and corporate annual reports and in fining the corporation for failing to comply with § 351.215. In one of its points, Five I argues that the trial court misinterpreted and misapplied the law in ordering the inspection of the tax returns and annual reports because § 351.215.1 limits the documents that a corporation must allow its shareholders to inspect to those that the statute requires it to maintain at its registered office or principal place of business in this State. Five I contends that *State ex rel. Jones v. Ralston Purina Co.*, 358 S.W.2d 772, 777 (Mo. banc 1962), supports this contention and limits the documents a shareholder is legally allowed to inspect to a stock book, a book in which the amount of assets and liabilities is recorded, and a book in which the names and

places of residence of its officers is recorded.

In making its argument, Five I wholly misconstrues both § 351.215.1 and *Jones*. A corporation has a statutory obligation under § 351.215 to allow shareholders to inspect the books of the corporation. *State ex rel Gundaker v. Davis*, 932 S.W.2d 885, 886–87 (Mo.App. E.D.1996). Section 351.215.1, RSMo 2000, provides:

> Each corporation shall keep correct and complete books and records of account, including the amount of its assets and liabilities, minutes of the proceedings of its shareholders and board of directors, and the names and business or residence addresses of its officers; and it shall keep at its registered office or principal place of business in this state ... books and records in which shall be recorded the number of shares subscribed, the names of the owners of the shares, the numbers owned by them respectively, the amount of shares paid, and by whom, and the transfer of such shares with the date of transfer. Each shareholder may at all proper times have access to the books of the company, to examine the same, and under such regulations as may be prescribed by the bylaws.

In *Jones,* the Missouri Supreme Court interpreted the statute as follows:

> Each corporation is required to keep, wherever it may choose, correct and complete books and records of account and minutes of the proceedings of its shareholders and board of directors.
>
> Each corporation is required to keep at its registered office or principal place of business in this state certain specific books, i.e., a stock book (including a book recording transfers of shares of stock), a book in which the amount of its assets and liabilities shall be recorded, and a book in which the names and places of residence of its officers shall be recorded; which specific books shall be kept open for the inspection of all persons interested.
>
> **Each shareholder may at all proper times and under such regulations as may be prescribed by the by-laws have access to and may examine *all of the books of the company, not only those which are required to be kept in this state,* but those which are required to be kept wherever the corporation may choose to keep them.**

*Jones,* 358 S.W.2d at 777–78 (emphasis added).[6] Accordingly, the Missouri Supreme Court has expressly held that, under § 351.215.1, a shareholder's right to inspect is not limited to those books required by § 351.215.1 to be maintained at its registered office or principal place of business in this State. Therefore, in assessing whether a shareholder has the right to inspect a requested document, "[t]he question is ... whether the paper writings sought to be inspected are 'books'

---

**6.** In *Jones,* the Court also noted its agreement with the statement regarding the legislative purpose of § 351.215 contained in the previous Court of Appeals decision. *Jones,* 358 S.W.2d at 777. In regard to the legislative purpose, the Court of Appeals opinion stated: "[I]t is clear that the purpose the legislature sought to accomplish by the enactment of this statute was threefold. First, the purpose was to require a corporation to keep complete and correct books, records of account, and min-

utes. Second, certain of these books were required to be kept at the corporation's registered office or principal office of business in this state, and these are set out in the second clause of subsection 1. Third, by the last sentence of subsection 1, § 351.215, supra, the legislature required that the books of the company are to be available to the stockholders for their examination." *State ex rel. Jones v. Ralston Purina Co.,* 343 S.W.2d 631, 638 (Mo. App.E.D.1961).

within the meaning of the statute." [7] *Id.* at 778.[8]

 Furthermore, Section 351.215.1 provides that "[e]ach shareholder may at all proper times have access to the books of the company, to examine the same, and under such regulations as may be prescribed by the bylaws." Five I's corporate bylaws provide that the Treasurer "shall keep, or cause to be kept, a book or books setting forth a true record of the receipts, expenditures, assets, liabilities, losses and gains of the corporation." The bylaws do not provide regulations for the examination of the corporate books, however, the shareholder agreement executed by Appellant and Five I provides that "[e]ach shareholder shall be entitled to examine the books and records of the Corporation at all reasonable times." The bylaws do not purport to limit shareholder examination of the books and records to those

documents maintained at its principal place of business which are available to the interested public in accordance with § 351.215.2. In fact, the bylaws reflect that the company's "books," as contemplated by Five I, are comprised of more than just those documents reflected in § 351.215.2.

The trial court did not err as a matter of law in ordering Five I to produce documents beyond those that Five I was required by statute to maintain at its registered office or principle place of business in the State of Missouri.[9] Point denied.

In another of the points in its cross-appeal, Five I contends that the trial court erred in applying the wrong legal standard in assessing whether Appellant had an improper or illegal purpose for seeking to inspect those documents. In *State ex rel. Kennedy v. Continental Boiler Works, Inc.*, 807 S.W.2d 164 (Mo.App. E.D.1991), the Court noted that a writ of mandamus

---

7. In *Hamill v. Hamill*, 972 S.W.2d 632, 635 (Mo.App. E.D.1998), the Eastern District affirmed the trial court's judgment ordering the company to " 'make available ... all books and records of account of said corporation (including all shareholder lists, records of share transfers, corporate minute books, balance sheets, profit and loss statements, general ledgers, income tax returns, check registers, bank statements, and financial statements ...)' " and ordering the corporate officers to pay a $250 fine for violating § 351.215. While the court did not specifically address whether the listed documents fell under § 351.215, the *Hamill* court clearly considered these items to be the "corporate books, records and minutes." *Id.*

8. The *Jones* Court found that under the evidence presented at trial, the trial court was warranted in finding that the requested documents were "analyses or tentative studies prepared purely for the information of the management, and, being in the nature of confidential inter-office communications, were not comprehended within the meaning of 'books' as that term is used in the statute." *Jones*, 358 S.W.2d at 778. Contrary to Five

I's contentions, the *Jones* Court did not base its finding on the fact that the requested documents were not included in the list of documents to be retained at the registered office or principle place of business.

9. In *Dawson v. Dawson*, 645 S.W.2d 120, 126 (Mo.App. W.D.1982), this Court stated that "[t]he right to inspect is provided for in § 351.215 which requires corporations to give shareholders access to certain documents." A footnote attached to that comment goes on to state, in dicta, without any citation, that "[t]he accessible documents are limited to minutes of shareholder and board proceedings, books recording the number of shares subscribed, names of shareholders and the number owned by each, the amount of shares paid and by whom, transfers of shares, amount of assets and liabilities and names and residences of officers." *Id.* at 126 n. 5. As this commentary is *obiter dicta*, it has no precedential value. *Campbell v. Labor & Indus. Relations Comm'n*, 907 S.W.2d 246, 251 (Mo.App. W.D.1995). Moreover, as can be seen from the discussion in the main text, it is contrary to our Supreme Court's decision in *State ex rel. Jones v. Ralston Purina Co.*, 358 S.W.2d 772, 777 (Mo. banc 1962).

was the remedy of choice in cases where a shareholder has been denied the right to inspect and that there are only three instances in which such a writ will be denied:

> The first is the most obvious one, where the shareholder does not own the shares. *State ex rel. Schultz v. Schultz,* 710 S.W.2d 507 (Mo.App.1986). The second occurred in *State ex rel. Jones v. Ralston Purina Company,* 358 S.W.2d 772 (Mo. banc 1962), where the documents sought were internal memoranda. The third reason for denial is discussed frequently as an exception to the right but rarely invoked. If the court determines that inspection is sought for an improper purpose then it may deny the writ. *See State ex rel. Moore v. State Bank of Hallsville,* 561 S.W.2d 722 (Mo. App.1978).

*Id.* at 167. "Absent proof of an 'evil or unlawful nature,' plaintiff, as a stockholder, clearly has the right to inspect so as to protect his own investment in the corporation." *Id.* at 166 (internal citations omitted).

At trial, Five I contended that Appellant should be denied access to the requested documents because he had an improper motive for seeking to inspect those documents. With regard to whether Appellant had an improper or illegal purpose for seeking to examine the requested documents, the trial court made the following finding:

> To leverage his demand, this court finds and believes by a preponderance of the evidence that "threats" of "messy" litigation have been made by plaintiff's attorneys, . . . for the purpose of forcing an excessive buy-out of plaintiff's interests. Admittedly, plaintiff denies that motivating purpose, instead asserting that his 351.215 purpose is to acquire sufficient information with which to evaluate and protect his minority interest in

IIIII. However, after weighing the credible evidence, this Court is not convinced by 'strong and convincing evidence' that the purpose of plaintiff's request is improper or unlawful.

On appeal, Five I contends that the trial court erred as a matter of law in improperly applying a "strong and convincing evidence" standard in assessing the motives of Appellant and that a preponderance of the evidence standard should have been applied. In apparently applying a "strong and convincing evidence" standard, the trial court cites to *State ex rel. Watkins v. Cassell,* 294 S.W.2d 647, 654 (Mo.App. E.D.1956). However, the language cited in *Watkins* does not establish an evidentiary standard and arises during the court's weighing of the evidence:

> Relator did art work for the company. In addition to being a director, he owned one-fourth of the business. In other words, he made his living off the company. Under the circumstances, it would be unreasonable to believe that he would want to destroy the company and this source of income, absent strong and convincing evidence that such was his purpose.

*Id.* at 654. In making these comments, the *Watkins* court was simply observing that, given the evidence of the vested interest the Relator had in the company, it would take strong and convincing evidence of an improper purpose for the court to believe that he would wish to destroy the company.

Appellant concedes that *Watkins* does not explicitly adopt a "strong and convincing evidence" standard but argues that such a standard should be applied. Appellant's argument is unconvincing.

 When a shareholder asserts his or her statutory right to inspect the corporate records, there is a presumption

that the shareholder is seeking access to those records in good faith. *Id.* at 652–53. A party opposing the shareholder's right bears the burden of rebutting that presumption. *Id.* at 653. Upon hearing the evidence, if the court determines that inspection is sought for an evil, improper, or illegal purpose, it may deny the writ. *See Schultz,* 710 S.W.2d at 509; *Kennedy,* 807 S.W.2d at 167. We believe that the burden imposed upon the party opposing the right of inspection is to establish an evil, improper, or illegal purpose by a preponderance of the evidence. Appellant fails to identify any legal authority or compelling policy reasons for imposing a heavier burden of proof.

 It is unclear to us, after careful review of the trial court's findings, whether it was saying that it did not find the purpose of Appellant's request improper or unlawful, or whether it was stating that a preponderance of the evidence supported such a finding, but the evidence was not strong and convincing so as to enable the court to rule that the purpose was improper or unlawful. Since the case is being remanded for further proceedings on the common law claims, we likewise remand this issue to the trial court so that it may make a determination whether the evidence showed an evil, illegal or improper motive on the part of Appellant in seeking the requested records based on a preponderance of the credible evidence.

Because the case must be remanded for a finding with regard to whether Appellant had an evil, improper, or illegal motive in seeking to inspect the requested documents, we need not address Appellant's remaining claims on appeal. In the event the trial court finds that the evidence fails to establish that Appellant sought the records for an improper or illegal reason, the trial court will have the opportunity to reassess whether each of the requested

documents should have been produced for inspection. However, in the interest of judicial economy, we will briefly comment on a couple of Appellant's additional arguments.

Appellant claims that the trial court erred in finding that he could not have access to any of the records of Five I's subsidiaries. The record indicates that Five I was the majority shareholder, if not the sole shareholder, in all of the subsidiaries at issue. In its judgment, the trial court denied Appellant access to those documents solely on the basis that he was not a shareholder in any of those companies.

We find no authority to support the trial court's determination that shareholders in a corporation are never afforded the right to inspect documents of the corporation's subsidiaries in which the shareholder does not directly hold stock. To the contrary, in *State ex rel. United Brick & Tile Co. v. Wright,* 339 Mo. 160, 95 S.W.2d 804, 808 (1936), the Missouri Supreme Court affirmed a trial court's judgment granting its writ of mandamus allowing a shareholder in a holding corporation to examine the records of one of its subsidiaries. In so doing, the court noted that in some instances a parent corporation may be held liable for the torts of its subsidiary. *Id.* at 808. "[T]he test of whether or not the corporate entities of a parent and subsidiary company should be ignored [in a tort case] is the manner in which the business is operated—the 'dominion [of the subsidiary by the parent] may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal [in the conduct of the business] and the subsidiary an agent.' " *Id.* (quoting *Berkey v. Third Ave. Ry. Co.,* 244 N.Y. 84, 155 N.E. 58, 61 (N.Y.1926)). The Court held that even greater liberality should be indulged in determining whether the connections between a parent company

and its subsidiary were sufficient to compel the examination of the subsidiary's corporate books. *Id.*

■ Therefore, we believe that the trial court misstated the law when it found that Appellant could not inspect the documents of the subsidiaries solely because Appellant did not directly hold shares in those companies. If this issue arises on remand, the trial court will need to examine the corporate structure of Five I and its relationship with its subsidiaries, along with any other relevant facts, and determine whether Five I asserted sufficient control over the various subsidiaries to warrant inspection of their books.

■ Appellant has also challenged the trial court's finding that the audit report provided by Five I has sufficient information to meet Appellant's needs and that Five I did not have to allow him to inspect the books and other records used by Five I's accountant to compile that report. On remand, in the event the issue again arises, the trial court should take note of *State ex rel. Kennedy v. Continental Boiler Works, Inc.,* 807 S.W.2d 164, 167 (Mo.App. E.D.1991) (quoting *Watkins,* 294 S.W.2d at 652), holding that the statutory right of a stockholder to inspect the books and records cannot " 'be taken away by the substitution of some other method of informing him [or her] of the matters of which he [or she] desires to learn.' " A shareholder is not relegated to accepting the opinions and numbers offered by the company's auditor. Indeed, stockholders may ordinarily employ an expert accountant of their own to review and analyze the books and records of the corporation for the shareholder. *State ex rel. Aimonette v. C. & R. Heating & Serv. Co.,* 475 S.W.2d 409, 414 (Mo.App. E.D.1971).

The judgment is reversed and remanded for further proceedings consistent with this opinion.

All concur.